MARY LUCK v. B. L. ZAPP ET AL.

No. 44.

1. **Homestead.**—Plaintiff owned the house from which she was ejected, and was living in it at the time, but had sold the ground upon which it stood, reserving the house and the right to remove it at any time within two years.  This evidence did not warrant the court in concluding, as a matter of law, that plaintiff was not entitled to it as her homestead.  That she could acquire homestead right in such property, has been decided.

2. **Liability of Sheriff for Acts of His Deputy.**—The deputy sheriff, acting in his official capacity, and by virtue of an execution from a Justice Court, ejected plaintiff from her house, removed her goods therefrom, and nailed it up.  The sheriff was told that it was her homestead, and appealed to to release the levy, and refused.  The act done by the deputy was wrongful, and the sheriff and his sureties are liable therefor.

3. **Same.**—In seeking to fix upon the sheriff liability for the acts of his deputy, appellant was only required to show that the wrongful act complained of was one which the deputy might, under proper circumstances, do as an officer, and that in fact it was done under color of or by virtue of his official station.

4. **Deputy the Agent of Sheriff.**—The deputy was the general agent of the sheriff, and it was his duty to determine, as a guide to conduct in the execution of the writ which he held, the scope of the authority which it conferred, and the nature of the action which it enjoined or authorized.  His determination of those questions, and his acts done in pursuance of it, were the exercise of official authority conferred upon him by his principal, and the latter was responsible for them.

5. **Parol Evidence.**— The court below did not err in excluding parol evidence of the contents of the writ, but it was legitimate for plaintiff to show by parol that the deputy was assuming to act under an execution.

Appeal from Fayette.　Tried below before Hon. H. Teichmueller.

*W. S. Robson*, for appellant. — 1. When an officer, such as deputy sheriff, does an act under color of his office, claiming to act, and, so far as he is concerned, intending to act officially, it is immaterial whether he has a writ or legal process. The act is official, and he and his principal are liable for any wrongs or injuries resulting. Murf. on Sheriffs, secs. 927, 929, 933, 938, 941, 943; 8 Jacob's Fish. Dig., art. 12,219; 60 Texas, 445.

2. Where a sheriff is notified of the wrongful acts of his deputy, it is his duty to place the injured party in statu quo, if the circumstances will permit; and failing to do so when requested, he adopts and ratifies the act of his deputy and thus becomes liable therefor. Story Agency, secs. 239, 242, note; 17 Texas, 575; 18 Texas, 824, 825; 31 Texas, 89–91; 12 Wall., 681; Hays v. Creary, 60 Texas, 445; Tynburg & Co. v. Cohen, 67, Texas, 220.

*Brown, Lane & Jackson* and *R. H. Phelps*, for appellees.—A sheriff is not responsible for the unofficial acts of his deputies, although he may expressly approve the said acts after they are committed. Murf. on Sheriffs, sec. 77.

WILLIAMS, Associate Justice.—This action was brought by appellant against appellee Zapp, as sheriff of Fayette County, and the other appellees as sureties on his official bond, to recover damages caused by alleged wrongful acts of Zapp's deputy.

The petition charged in substance that the deputy, in his official capacity, wrongfully and maliciously ejected plaintiff from her house, by virtue of some pretended writ, and carried her household goods out of the house, and dispossessed her of her home.

The case was tried before a jury, and, after the introduction of evidence had concluded, the presiding judge instructed the jury that the plaintiff had not established the allegations in her petition, and directed them to find for defendant.

In what particular the judge regarded the evidence as insufficient is not made to appear from the record. It is contended by appellees that the acts of the deputy sheriff, shown by the evidence, did not belong to that class for which his principal would be responsible, and we infer, from the briefs of both parties, that this view was taken by the trial court.

We gather from the evidence that appellant owned the house referred to in the petition, and was living in it when the acts complained of took place. She had some months before sold the land on which it stood to another person, reserving the house and the right to remove it at any

time within two years from the date of the deed. Appellees controverted the fact, asserted by her, that the house was her homestead, but it is sufficient to say upon this point, that the evidence was not such as to warrant the court in assuming, as matter of law, that she was not entitled to it as her homestead, free from forced sale for debt. That she could acquire a homestead right in such property is decided in Cullers & Henry v. James, 66 Texas, 494.

Sometime in March, 1889, one W. T. Rhodes, a deputy of Zapp, claiming to act in his official capacity as such deputy, levied upon the house by virtue of some writ, which is referred to in the answer of appellees and in the evidence as an execution issued from a Justice Court. Its nature is not further shown.

About the 4th of April, the deputy went to the house, where appellant then was, and commanded her to get out of it; and upon her refusal to do so, put her out, carried all of her goods from the house, nailed it up, and thus deprived her of its possession. The deputy, while thus acting, asserted that he was doing so by virtue of his authority as deputy sheriff, and that he had a good bond behind him. Between the time of the levy and the dispossession of appellant, and also after the latter transaction, Zapp was notified of his deputy's acts, was told that the house was appellant's homestead, and was appealed to to release the levy, and, afterward, to restore appellant to the possession of the property. At one time he said he knew nothing about it; that it was from the Flatonia department; that it originated from a Justice Court. At another time, when fully informed as to what his deputy had done, and appealed to to undo it, he replied, that he knew nothing of the proceedings as far as the writ was concerned; that he would not do it; that the other side intended to fight it, and would protect him. The deputy testified on the stand that he acted in his official capacity of deputy sheriff. Appellant offered to prove by him the nature and contents of the writ under which he acted, but this was excluded by the court, on objection being made by appellees.

If the property was appellant's homestead—and the evidence would at least warrant the conclusion that it was—it was not subject to levy; and in such case, the acts done by the deputy in dispossessing appellant were clearly wrongful.

Had it been shown that these acts had been done by the sheriff himself, acting under color of his office, a prima facie case would have been made against him and his sureties, and the burden would have been cast upon him to justify them.

In seeking to fix upon him liability for the acts of his deputy, the appellant was required only to show that the wrongful act complained of was one which the deputy might, under proper circumstances, do as an officer, and that it was in fact done under color or by virtue of his official station.

Says the Supreme Court of Massachusetts: "If the act from which the injury resulted was an official act, the authorities are clear that the sheriff is answerable; if it was not an official, but a personal act, it is equally clear that he is not answerable. But an official act does not mean what a deputy might lawfully do in the execution of his office; if so, no action could ever lie against the sheriff for the misconduct of his deputy. It means, therefore, whatever is done under color or by virtue of his office." Knowlton v. Bartlett, 1 Pick., 278; Murf. on Sheriffs, sec. 60.

The deputy was the general agent of the sheriff (Murfree on Sheriffs, section 75), and it was his duty to determine, as a guide to conduct in the execution of the writ which he held, the scope of the authority which it conferred, and the nature of the action which it enjoined or authorized. His determination of those questions, and his acts done in pursuance of it, were the exercise of official authority conferred upon him by his principal, and the latter was responsible for them.

It was not necessary for the plaintiff to produce the writ under which the deputy proceeded. That he acted by virtue of his office could be shown by parol evidence. Murf. on Sheriffs, sec. 943.

We think the evidence, as we have stated it, showed that the deputy was acting officially, and was sufficient to entitle plaintiff to have the cause submitted to the jury.

The court below did not err in excluding parol evidence of the contents of the writ, but it was legitimate for plaintiff to show by parol that the deputy was assuming to act under an execution.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 1, 1892.