Winnie R. EBARB, Appellant,

v.

The STATE of Texas, Appellee.

No. 56747.

Court of Criminal Appeals of Texas,
Panel No. 2.

June 27, 1979.

On Rehearing May 28, 1980.

John V. Elick, Bellville, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and ODOM, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for carrying a handgun wherein punishment was assessed at 10 days and a $500 fine. In a prior opinion this appeal was dismissed for lack of a timely notice of appeal. By supplemental transcript it has been shown that a timely notice of appeal was in fact given. Accordingly, the appeal is reinstated and will be disposed of on the merits.

■ Appellant asserts error was committed when the trial court refused to suppress the handgun as the fruit of an illegal detention. The trial court denied appellant's motion to suppress after conducting a hearing on the issue. This was sufficient to preserve the matter for review on appeal. Art. 40.09(6)(d)(3), V.A.C.C.P. Although appellant's son testified on direct examination by the defense that he was responsible for the pistol being in the car at the time of the arrest, his testimony was presented in an attempt to meet, rebut and explain the evidence obtained in the challenged seizure, and does not constitute a waiver of the objection. *Nicholas v. State*, Tex.Cr.App., 502 S.W.2d 169. We therefore consider this search and seizure issue on the merits.

Sheriff Maddox of Austin County was at the annual Sealy Firemen's Frolic when someone told him that Winnie Ebarb was carrying in her car some illegal pills and a handgun. He and several of his deputies, Sealy policemen, and the local District Attorney, who were also attending the Frolic, departed in two cars in search of Mrs. Ebarb. After driving around Sealy for awhile the car was spotted by the Sheriff and followed until it pulled into a driveway

and stopped. The driveway was that of Mrs. Ebarb's son where she was staying. The car contained Mrs. Ebarb, her son and daughter-in-law. The sheriff and his companions in the search stopped their cars and went to Mrs. Ebarb's car. The Sheriff approached the passenger side where Mrs. Ebarb was sitting, identified himself and asked if he could search the car. She replied "Well, certainly" and exited the car. As she was doing so the dome light came on and revealed a pistol on the front seat of the car. The car was searched and no drugs were found. The pistol was used in the instant prosecution.

■ Appellant argues that the pistol was seized as the result of an illegal detention while the State declared that the pistol was admissible as having been observed in plain view before seizure. The State is correct as far as it goes. Contraband seen in the open is subject to seizure by police. *Jones v. State*, Tex.Cr.App., 565 S.W.2d 934; *Clark v. State*, Tex.Cr.App., 548 S.W.2d 888; *Evans v. State*, Tex.Cr.App., 530 S.W.2d 932. However, before the plain view doctrine may be relied on, it must be shown that the officer had a right to be where he was at the time of his observation.

As was stated in *Clark, supra*, at 889, "A police officer may seize what he sees in plain sight or open view if he is *lawfully* where he is." (Emphasis added.) In the instant case the gun was observed in plain view by police officers in the course of an investigatory stop.[1] If the stop was not a lawful exercise of police power, then the object seen in plain view should have been suppressed.

■ In this case information about a criminal act came to the Sheriff's attention at a time when it was not possible to obtain a magistrate's approval to search or arrest in the form of a warrant. However, police officers are not required to shrug their shoulders and permit crime to occur and criminals to escape, even when probable cause to arrest or search does not exist. Circumstances short of probable cause for arrest may justify temporary detention for purposes of investigation. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Brem v. State*, Tex.Cr.App., 571 S.W.2d 314; *Greer v. State*, Tex.Cr.App., 544 S.W.2d 125; *Mann v. State*, Tex.Cr.App., 525 S.W.2d 174. But in order to justify the intrusion, the law enforcement officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Shaffer v. State*, Tex. Cr.App., 562 S.W.2d 853. The reason for having this requirement for specific articulable facts is so a magistrate can, at a later date, examine the circumstances to ensure that the constitutional rights of the citizenry have been observed.

"The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard; would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. at 21–22, 88 S.Ct. at 1880.

■ The specific and articulable circumstance which justified this investigatory stop was solely and exclusively the tip of an informant. It therefore behooved the trial court to examine this information and its source to see if it would "warrant a man of

1. The Sheriff testified that he would not have allowed Mrs. Ebarb or the other occupants of the car to leave once they had been approached. The officers also had driven the two cars separately in the search for appellant and her car, and converged when she was found by the occupants of one of the cars.

reasonable caution in the belief" that a crime was taking place or that an investigatory stop was justified. At the suppression hearing the only testimony about the informant was from Sheriff Maddox on cross-examination:

"A. All right. I had information that she had some pills in the car that she had been trying to sell to some kids, and that she definitely had a revolver in the car with her.

"Q. And who was this information from?

"A. I will have to get that information. I don't have any of it—my notes or anything with me. I sure don't have. I can get it, but I don't have it with me today."

Defense counsel was not allowed to inquire further into the informant's identity.

"Q. This informant, have you gotten information from this informant before?

"A. Yes, we got some information.

"Q. Have you made an arrest on that information?

"A. I haven't myself.

"Q. How many times, if you know, have you gotten information from this informant?

"A. I wouldn't be able to give you an answer.

"Q. Is it because you don't recall?"

The inquiry was then cut off by objections, which were sustained, that the informant was irrelevant because the gun had been found in plain view.

 The Sheriff's testimony was inadequate to make an evaluation of the reliability of the informant or the information on which the stop was based. In *Adams v. Williams*, supra, the U.S. Supreme Court case which most clearly parallels this one, a police officer was told that a person sitting in a car in a parking lot had drugs and a pistol with him. The information justified an investigation by the police officer. The informant was known to him personally and

had provided him with information in the past. This combined with other circumstances to give "enough indicia of reliability to justify the officer's forcible stop of Williams." *Adams*, 407 U.S. at 147, 92 S.Ct. at 1923–24. *Milton v. State*, Tex.Cr.App., 549 S.W.2d 190, involved the investigatory detention of an individual on the basis of an informant's tip. The information had been received "from a known and reliable informer who had previously given information to the police about narcotic violations." We pointed out that the informer told police that the suspect had heroin on his person packaged in tinfoil, that he had personally observed heroin in the suspect's possession within the last 24 hours, and that the informer was familiar with heroin and narcotics paraphernalia. This information from an informant the officer considered reliable was a specific and articulable circumstance sufficient to justify the initial investigatory stop of the suspect. See also *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In the present case the trial court had before it only the testimony that the Sheriff had gotten information from someone whose name he didn't remember and who had given some information in the past.[2] There was no testimony which would enable the trial court to evaluate the reliability of the informant or the information. That being the case, and since the informant's tip was the only justification for the stop which allowed the plain viewing of the gun, we find that there was insufficient evidence of specific and articulable circumstances to justify the stop and that the pistol found as a result of that stop should have been suppressed. As the gun was essential to the crime charged, we cannot say the error was harmless.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

In this case there was no arrest. Even though the appellant gave consent to a

---

2. Revealing an informant's name is not necessary to show his reliability. The fact that the Sheriff did not know his name is, however, relevant to an evaluation of his ability to vouch for the informant's reliability.

search, there was no search. The majority holds that even though the officers did not stop the automobile in which the appellant was riding, it will be considered as a stop. The car was already stopped when the officers arrived. There was no detention of appellat until after the officers saw the pistol on the seat of the car where she had been sitting.

After receiving information that the appellant was selling pills, uppers and downers, to children and that she had a pistol, the officers began to look for her. Sheriff Maddox testified that he never got within a half block of the car until it stopped in a driveway at a garage apartment and he drove up to the side of the car and asked if he could search. Appellant said, "Certainly." He made no search but as she got out of the car he saw the pistol on the front seat near where she had been sitting. She was convicted for carrying this pistol.

The majority points to no evidence that the officers made a stop. There is no evidence that the officer detained appellant in any way. The only thing about a stop in this case is the statement made by the majority that it will be considered a stop. Appellant's son testified and he did not testify that the officer stopped the car. He testified that the gun was in the car and that the gun belonged to the appellant and that she knew it was in the car.

The majority assumes that the sheriff had no right to be on a driveway near a garage apartment. The sheriff had sufficient information to have stopped the automobile under the "stop and frisk" doctrine of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). See Baity v. State, 455 S.W.2d 305 (Tex.Cr.App.1970).

In Terry, the Supreme Court recognized that, because the "stop" is more limited in scope than an arrest and because the "frisk" is more limited in scope than a full blown search, such actions, though not undertaken arbitrarily, may be reasonable within the contemplation of the Fourth Amendment. Upon a predicate less substantial than "probable cause", Terry made it clear that the "stop and frisk" rationale was to be judged not by the warrant clause of the Fourth Amendment, but rather by the reasonableness clause. It said at 392 U.S. 20, at 88 S.Ct. 1879:

"If this case involved police conduct subject to the Warrant Clause of the Fourth Amendment, we would have to ascertain whether 'probable cause' existed to justify the search and seizure which took place. However, that is not the case. * * * [W]e deal here with an entire rubric of police conduct—necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures."

In Terry, it was assumed, from the outset, that the "stop" was reasonable. The nub of the case was whether the followup "frisk" had also a reasonable predicate. In Terry, the Court wrote:

"The crux of this case, however, is not the propriety of Officer McFadden's taking steps to investigate petitioner's suspicious behavior, but rather, whether there was justification for McFadden's invasion of Terry's personal security by searching him for weapons in the course of that investigation." 392 U.S. 23, 88 S.Ct. 1881.

The governmental interest which permits a limited restraint upon a citizen's freedom—something more than mere accosting but less than formal arrest—is that of preventing and detecting crime. This interest is served by the "stop." In Terry, the Court wrote:

"[W]e consider first the nature and extent of the governmental interests involved. One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person

for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."

Even though there was not a stop in the present case, the officer had more reason to stop the appellant than there was in the *Terry* case. The officer had received information that the appellant was selling uppers and downers to children and that she had a pistol.

Even though there was no frisk in the present case, after the car was stopped the officers had a right to "frisk" or look for a weapon. The weapon was seen when appellant got out of the car. No frisk was necessary. A well-reasoned opinion by Justice Moylan in *Williams v. State*, 19 Md. App. 204, 310 A.2d 593 (1973), involved the stop and frisk of a motorist. In that case the officers had received information that a shooting had occurred an hour and a half before. A police bulletin notified the officers to be on the lookout for a "dark automobile with chrome mag wheels." Acting on this information, an officer observed a "black '62 Chevrolet with chrome mag wheels sitting on Walter's [Parking] Center Lot." The officer made a U-turn to follow the automobile and stopped it. It developed that neither the automobile nor any of its occupants had been involved in the shooting at Chino's. The Court wrote:

"It is unnecessary for us to face the issue of whether Sgt. Baker had probable cause to search the automobile or had probable cause to arrest any of its occupants, and our forbearance intimates nothing in those regards. It is enough to hold that the similarity between the car he stopped and the car described in the police bulletin gave him at least 'a reasonable suspicion' or 'a reason to believe' that the car and its occupants may have been 'connected with criminal activity.' This was ample reason to 'stop' the occupants of the automobile and to detain them 'briefly for questioning' under the rationale of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *Gibbs v.*

*State*, 18 Md.App. 230, 306 A.2d 587. Sgt. Baker was not acting upon 'his inchoate and unparticularized suspicion or "hunch" ' but rather was 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed the] intrusion.' *Terry*, supra, 392 U.S. at 21–22, 88 S.Ct. at 1880.

"Initially it is to be noted that an occupant of an automobile is just as subject to a reasonable 'stop' and to a reasonable 'frisk' as is a pedestrian. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). And see *People v. Cassese*, 47 Misc.2d 1031, 263 N.Y.S.2d 734. We believe that when Sgt. Baker spotted four individuals on a parking lot late at night in an automobile which matched the description of one recently involved in a nearby 'shooting,' he came within the Supreme Court's 'recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' *Terry, supra*, at 392 U.S. 22, 88 S.Ct. 1880. The 'stop' was reasonable and, therefore, constitutional."

In *Crawford v. State*, 544 S.W.2d 163 (Tex.Cr.App.1976), an officer was talking to a suspect whom he believed had committed the crime of theft. He had no right to make an arrest. He had a right to stop her from grabbing her purse because he had been informed that she carried a pistol. He was justified in making a weapon's check for the purse and the pistol found in the search was admissible.

In *Ablon v. State*, 537 S.W.2d 267 (Tex. Cr.App.1976), the officers lacked probable cause to stop Ablon. They had been informed that a suspicious person wearing a cowboy hat and boots, blue jeans and a green tank type shirt was in the fenced back yard when no one was at home. Later the officer saw Ablon near that location and he was wearing the clothes that were given in the description by the person calling. When Ablon told the officer that he

did not live there, the officer asked for identification. The officer asked Ablon to step to the squad car and patted him down for a weapon's search and noticed a bulge in his pants' pocket. Ablon took the bottle out and the officer took it. It contained pills which were diazepam, which has a trade name of Valium. There the Court held:

"Circumstances falling short of probable cause for an arrest may justify temporary detention for the purposes of investigation since an investigation is considered to be a lesser intrusion upon the personal security of an individual than is an arrest."

That opinion cited many cases, including *Baity v. State*, 455 S.W.2d 305 (Tex.Cr.App. 1970), and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The officer had less information in the *Ablon* case than he did in the present case.

In *Greer v. State*, 544 S.W.2d 125 (Tex.Cr. App.1976), an officer saw an automobile being driven on the wrong side of Seventh Street in Austin and was possibly driving while intoxicated. An officer received a radio broadcast for any police unit in that area that they had a "possible dwi." An officer saw a car that fit that description and stopped it. This Court, in that case, held the Fourth Amendment has been held not to require policemen who lack a precise level of information necessary for probable cause to arrest to simply shrug their shoulders and allow crime to occur or a criminal to escape, citing many authorities. The Court also held that an occupant of an automobile is just as subject to a brief detention as is a pedestrian.

Even assuming, as the majority does, that there was a stop of appellant in the present case, the officers had a right to stop appellant for an investigation. See *Dodd v. Beto*, 435 F.2d 868 (5th Cir. 1970). In *Johnson v. State*, 469 S.W.2d 581 (Tex.Cr.App. 1971), the trial judge permitted evidence to be introduced where the officers went on the premises of an apartment complex and looked through a window and saw some stolen goods. This was before a warrant was issued. The trial judge ruled that the officers had a right to investigate and this Court affirmed. The officers had more right in the present case, especially after consent, to look into an automobile than the officers did to look into the apartment without consent in the *Johnson* case. The home is entitled to more protection than the automobile.

The majority opinion, if followed, would unreasonably curtail legitimate investigation of crimes.

There were at least two housing units on the premises. Before this opinion, there had been no holding that officers could not go upon the parking area or driveway of apartment complexes to ask questions or ask for permission to search.

If it could be conceived that any Fourth Amendment rights were violated, those rights were waived when Mrs. Ebarb gave consent for the officers to search. As stated before, there was no search.

In *Sutton v. State*, 519 S.W.2d 422 (Tex. Cr.App.1975), a detective, after talking to an informer, went to the apartment rented by Ellen Given. When the detective knocked at the door, Sutton opened the door and invited him in. When asked if anyone else was there, Sutton told him that his son was in the room. The detective looked through the door and saw a boy on the bed and also saw a .357 pistol on the bedside table. The detective knew that a .357 pistol was on the list of stolen property. He went to the next room and examined the pistol and was able to identify it as the one stolen. He also found a dummy pistol made out of plastic or wood under another bed in the room. This gun was identified by the complaining witness as the one stolen in a robbery. The Court cited many authorities that where one has been invited in they are not trespassers and have a right to seize articles in open view.

Even if the officers had no right in the present case to be in the driveway or on the parking lot, the appellant consented to a search. After this consent, the sheriff saw the pistol. Any Fourth Amendment right was waived.

In *Barnett v. State*, 447 S.W.2d 684 (Tex. Cr.App.1969), the officers had no right to

arrest. They asked for consent to search the car and an attache case in it. Barnett consented. The search was held to be legal.

In *Mann v. State*, 525 S.W.2d 174 (Tex.Cr. App.1975), a tip was provided by an anonymous caller. The officers investigated and obtained some evidence. The Court wrote:

"The anonymous telephone call did not constitute probable cause for an arrest or a search of appellant or his car. However, circumstances falling short of probable cause for an arrest may justify temporary detention for purposes of investigation, since an investigation is considered to be a lesser intrusion upon the personal security of an individual than is an arrest. See *Hernandez v. State*, Tex. Cr.App., 523 S.W.2d 410; *Brown v. State*, Tex.Cr.App., 481 S.W.2d 106 (fn., page 110), citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Baity v. State*, Tex.Cr.App., 455 S.W.2d 305. See also *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.

"Officers Price and Broussard, upon receiving the anonymous call, were justified in initiating an investigation by proceeding to hunt for a car and occupants fitting the description given over the phone. See *George v. State*, Tex.Cr.App., 509 S.W.2d 347; *Onofre v. State*, Tex.Cr. App., 474 S.W.2d 699; *Moses v. State*, Tex.Cr.App., 464 S.W.2d 116; *Baity v. State*, supra. Upon locating a car fitting the description given them, with three men helping another whose vehicle had broken down, proper police work called for them to continue their investigation. The officers were called to the car by the driver of the injured vehicle, who sought a ride to work. Officer Price testified that the officers did not search the car; the identification papers were voluntarily handed to him by appellant, who was not at the time under arrest. The remainder of the officers' proceedings, as summarized above, was proper police work under the circumstances. . . . "

See Texas Digest, Arrest, ☞631.

The *Mann* case and many others should not be ignored by the majority; they should be followed or overruled.

Under the decision by the majority in this case, an officer who has been informed that a crime is being committed and he does not have sufficient probable cause to make the arrest cannot ask any questions or go up to the door of a house or up to an automobile and ask an occupant if he might talk to him or ask to be invited in a house if he does not have probable cause. The Fourth Amendment only prohibits unreasonable searches and seizures. The officers' conduct in this case was not unreasonable.

Until a few years ago, the general rule was that the admission of substantially the same testimony by an accused or another witness makes any error harmless. See *Hart v. State*, 447 S.W.2d 944 (Tex.Cr.App. 1969). See also *Ehrman v. State*, 580 S.W.2d 581 (Tex.Cr.App.1979).

Robert Ebarb testified that the gun belonged to his mother and that he put it in her car and that it was there at the time the officers saw it.

It is not necessary to rely upon harmless error in this case.

There was no "stop" by the officers; there was no arrest or detention until after the gun was seen. There was no search and, therefore, no unreasonable search or seizure under the Fourth Amendment.

The judgment should be affirmed.

Before the court en banc.

### ON STATE'S MOTION FOR REHEARING

ROBERTS, Judge.

After granting the State's motion for rehearing, we conclude that the panel's majority opinion was entirely correct.

The dissenting opinion from the panel would hold that there was no investigatory stop in this case because "[t]he car was already stopped when the officers arrived." This would confuse two distinct meanings of the word "stop." In the law of search and seizure the term "stop" means

something other than "halt"; it refers to a type of temporary detention for investigation. The "stop" was put in its constitutional framework in *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968): "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." It matters not whether the person was moving or standing still when the police officer accosted him;[1] what matters is that the person was then restrained in his freedom to move. Thus, when a person is sitting in a parked car and a police officer orders him to roll down the window or to open the door, there is at that point a temporary seizure for investigative detention—a "stop." *State v. Smith*, 137 Ga.App. 101, 223 S.E.2d 30 (1975). A "stop" is a seizure that is less intrusive than a full arrest, just as a "frisk" is a pat down for weapons that is less intrusive than a search for evidence. A "stop" has no more to do with a person's prior motionlessness than a "frisk" has to do with his prior friskiness.

> "The terms 'stop' and 'frisk' are used herein as convenient ways of referring to distinct police practices, and their use is not intended to suggest that the words themselves aid in resolving the difficult constitutional issues concerning these practices."

W. LaFave, 3 Search & Seizure, Sec. 9.1(a) n. 2.

■ The appellant was detained as soon as the sheriff approached her car, while the other members of the impromptu posse were blocking the driveway and detaining the appellant's son. See *United States v. Beck*, 602 F.2d 726 (5th Cir. 1979).

There is no cause for the expressed concern that this opinion will "unreasonably curtail legitimate investigation of crimes."

No change in the law has been wrought. Our opinion should curtail only two things:

■ It should deter officers (and prosecutors, if this case is typical) from undertaking to detain people on evidence which would not warrant a man of reasonable caution in the belief that the action taken was appropriate. Such seizures as the one in this case are not, and have not been permitted by the Fourth Amendment to the United States Constitution and Article 1, Section 9, of the Texas Constitution.

■ It also should curtail the prosecutors' practice of offering the fruits of a search and seizure without first proving that the search and seizure were proper under our constitutions.

One or both of these two infirmities affected the evidence in this case, and it should not have been admitted. V.A.C.C.P., Article 38.23.

The State's motion for rehearing is overruled.

CLINTON, Judge, concurring.

That Sheriff Maddox drove his unit onto and he and some six more officers "more or less surrounded" appellant's car in a private driveway was largely undisputed. Let us ponder, then, the matter of curtilage.

Since *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) created an invisible shield against warrantless electronic surveillance of one's telephonic conversations in a public booth, we are all wont to say, with Mr. Justice Stewart, that "the Fourth Amendment protects people, not places."[1] Yet, like Katz in the telephone booth, where a person is still has some bearing on his expectation of privacy. For notwithstanding its own lofty expression[2]

---

1. *Terry v. Ohio*, supra, itself demonstrates that a motionless person can be "stopped," for Terry was not moving when the policeman grabbed him and spun him around. "Officer McFadden followed Chilton and Terry and saw them *stop* . . . ." 392 U.S. at 6, 88 S.Ct. at 1872 (emphasis supplied).

1. Less familiar is the rejoinder from Mr. Justice Harlan: "The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a 'place'," *Katz v. United States*, supra, at 361, 88 S.Ct. at 516.

2. For example, near the end of his opinion Mr. Justice Stewart proclaims, "*Wherever a man may be*, he is entitled to know that he will remain free from unreasonable searches and seizures." (All emphasis is supplied through-

the Supreme Court itself is often fussy about whether a warrantless arrest is made in a "public place," e. g., *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), or as a consequence of observations from an "open field," *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) and *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), or a seizure is on a public street, in a parking space or about other open areas, *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). For its part from *Wolf v. State*, 110 Tex. Cr.R. 124, 9 S.W.2d 350 (1928) through *Worth v. State*, 111 Tex.Cr.R. 288, 12 S.W.2d 582 (1928) to *Cantu v. State*, 557 S.W.2d 107 (Tex.Cr.App.1977) this Court has regarded "curtilage" as descriptive of a protected area. Thus, though the concept of "constitutionally protected areas" may not "serve as a talismanic solution to every Fourth Amendment problem," *Katz*, supra, 389 U.S. at 351, n. 9, 88 S.Ct. at 511 n. 9, surely it may not be ignored in resolving them.

By what right, power and authority, then, did Sheriff Maddox penetrate the curtilage of the residence here in driving his motor vehicle up to the side of the car in which appellant was a passenger, alighting from it and accosting her without so much as a "by your leave"? *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) addressed, in its own words, "serious questions concerning the role of the Fourth Amendment in the *confrontation on the street* between the citizen and the policeman investigating suspicious circumstances," *id.* at 4, 88 S.Ct. at 1871,[3] so neither it nor its progeny supports the proposition that law enforcement officer is privileged to come onto private property on the strength of an amorphous report from an unremembered person attending a festive event.[4] If, as we now are permitted by *Payton v. New York*, —— U.S. ——, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) to state with confidence, a policeman is prohibited from making a warrantless and nonconsensual entry into a home in order to make a routine felony arrest[5] —perforce, he has no business being within its curtilage for that forbidden purpose[6] —surely it is anomalous to say that the citizen is afforded less than full protection "against arbitrary invasions by governmental officials," *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967), when the policeman enters his curtilage with less than probable

out by the writer of this opinion unless otherwise indicated.)

3. In *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) the officer observed Sibron in public places but had him step outside for the confrontation; Peters was apprehended in an apartment building, it is true, but by an officer who resided there and saw the suspicious movements from his own apartment, and incident to a lawful arrest searched Peters; the pistol in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) was taken from one in the front seat of a car parked on a public street; Mimms in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) was directed to get out of his motor vehicle after it had been stopped for a traffic violation.

4. As the panel opinion on original submission suggests, Sheriff Maddox did not reveal just how his informant came by his information. Thus, the tip did not describe criminal activity in sufficient detail for the trial court to know that the report was something more substantial than a casual rumor or accusation based mere-

ly on the general reputation of appellant. See *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969).

5. A matter not so clearly stated by the Court on motion for rehearing in *Moore v. State*, 149 Tex.Cr.R. 229, 193 S.W.2d 204, 207 (1946).

6. A similar analysis was employed by the Court also on rehearing in *Taylor v. State*, 120 Tex. Cr.R. 268, 49 S.W.2d 459, 461 (1932) in which it was written:

". . . If, however, they were in his yard unlawfully at the time they discovered the commission of the offense, the arrest of the appellant and the search of his residence cannot be upheld, and the evidence of his guilt obtained by virtue of an illegal entry into his yard would be inadmissible . . ."

But, finding that the officers were armed with a search warrant, the Court concluded that Taylor "was not in a position to complain of the reception of evidence which was obtained through a legal entry of his curtilage by virtue of a search warrant . . ."

cause to arrest but still questing for enough to do so. A lawman to whom doors remain closed until he produces an arrest warrant [7] must be otherwise authorized to take the first step off the public right of way without one.[8] It is not a matter of greater or lesser intrusion or weighing competing interests, judgmental calls often made by the Supreme Court in making Fourth Amendment law, but an understanding of existing constitutional and common law.[9] In *Payton*, supra, the Supreme Court finds that Fourth Amendment "has drawn a firm line at the entrance to the house;" in Texas, the bar is at the boundary of the curtilage. The *posse comitatus* led by the Sheriff invaded a constitutionally protected area to confront appellant.[10]

On this additional ground I join in overruling the State's Motion for Rehearing.

DOUGLAS, Judge, dissenting.

No amount of legalistic mumbo jumbo can change the facts to show that officers stopped the appellant when she was already stopped before they arrived. Her son stopped the car in which she was riding of his own accord without any order or signal on the part of an officer.

The only way there could have been a stop by the officers was that the majority

---

7. In *Payton*, supra, the Supreme Court concluded:

 ". . . It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."

8. A proposition considered so fundamental in *Delaporte v. State*, 471 S.W.2d 856 (Tex.Cr. App.1971) that without citation of authority an arrest outside an apartment was held invalid because "[t]here was no testimony to show that prior to the time Officer Keeton pushed open the apartment door either of the officers saw a crime being committed in their presence" nor was there evidence of a "disturbance" that purportedly brought them to the place, id. See Articles 14.01, 14.03 and 14.04, V.A.C.C.P. for general statutory authority for a warrantless arrest by a peace officer without a verbal order from a magistrate pursuant to Article 14.02, id. "[I]t is state law and not federal law that governs the legality of a state arrest so long as that law does not violate federal constitutional protections against unreasonable searches and seizures," *Milton v. State*, 549 S.W.2d 190, 192 (Tex.Cr.App.1977).

9. Prior to the exclusionary rule one remedy for wrongful arrest was a civil damage action for trespass, *Payton v. New York*, supra, —— U.S. at ——, 100 S.Ct. at 1383. The common law action is *trespass quare clausum fregit* —"trespass wherefore he broke the close," close being "the real or imaginary structure inclosing the land," Black's Law Dictionary (Rev. Fourth Ed.) 1675; 2 Waterman on Trespass 219. Though common law forms are extinct, that an action may be brought against a peace officer for trespass or, if he actually seizes the person, for false imprisonment has been the rule in Texas since at least *Hubbard v. Lord*, 59 Tex. 384 (1883) and still is, *Moody v. Kimball*, 173 S.W.2d 270, 274–275 (Tex.Civ.App.1943) no writ history. The fact that one is a policeman does not make him any less a trespasser into the curtilage. *People v. Ross*, 19 Cal.App. 469, 126 P. 375 (1912); *Commonwealth v. Eyre*, 1 Serg. & R. 347 (Pa.); cf. *Clannan v. Chaplain* 136 Va. 1, 116 S.E. 445, 499 (1923).

10. The "automobile exception" to the constitutional requirement that a warrant be obtained was first enunciated in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The core of the exception, as Mr. Justice White painstakingly explained in *Chambers v. Maroney*, 399 U.S. 42, 48–51, 90 S.Ct. 1975, 1980, 26 L.Ed.2d 419 (1970), is preexisting probable cause for the seizing officer to believe that the contents of the automobile he stops offend against the law, *Carroll*, supra, 267 U.S. 155–156, 158–159, 45 S.Ct. at 285–286, 287. Compare *Scher v. United States*, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938). Here, while the State has not communicated its views to the Court through a brief, the record makes clear that in the court below the State did not contend Sheriff Maddox approached the appellant's car with requisite probable cause, but sustained seizure of the pistol on its understanding of the "plain view" doctrine. The panel opinion on original submission demonstrates clearly that Sheriff Maddox was without preexisting probable cause. Thus, that appellant and others were still in her car when the officers accosted them does not invoke the *Carroll* automobile exception.

says there was a stop without any factual basis. Then after the majority says there was a stop of the appellant, through some sort of strange reasoning, they discuss two kinds of stop.

The majority also ignores the record which shows that there was no search, no pat down and no frisk of the appellant. The pistol which formed the basis of this prosecution was seen after appellant opened the door and gave consent to a search. The officers did not search but saw the pistol on the seat of the car where appellant had been seated.

There was no stop, halt or arrest until after the sheriff saw the pistol. The pistol was not seized by an illegal arrest or any sort of illegal stop, real or fancied. There was no illegal detention.

The majority of the panel opinion held that the officers obtained the pistol as a result of an investigatory stop. The question is who stopped appellant? The answer is that her son stopped the car in which she was riding. Let us look to the facts to determine the validity of the officers obtaining the pistol.

Officers received information that appellant was selling pills, uppers and downers, to children and that she had a pistol. Sheriff Maddox testified that, after looking for the car, he never got within a half block of it until it stopped in a driveway at a garage apartment and he drove up to the side of the car and asked if he could search. She said, "Certainly." He made no search but saw the pistol on the seat where she had been sitting.

The majority on rehearing writes that the dissenting opinion in the panel confused "two distinct meanings of the word 'stop'". What are the two meanings? If one is a halt and the other is a detention, where is either shown in this case?

If there was a detention, there was sufficient reason shown in the record for an officer to investigate one reported of carrying a pistol and selling pills to children. See the dissent to the panel opinion discussing the right of an officer to investigate.

Further, if there were any error it was made harmless when appellant's son testified that the gun belonged to appellant and it was in the car when it was seen by the officers. This is also discussed in the dissenting opinion on original submission.

What the officers did was good police work. They should be commended, not criticized. Only unreasonable searches and seizures are prohibited by the Constitutions of the United States and Texas. There was no unreasonable search or seizure in this case. Officers should not be deterred from making proper investigations to deter the commission of crimes.

The key to the illogical opinion on rehearing is quoted as follows: "The appellant was detained as soon as the sheriff approached her car . . . ." The majority opinion says that the officers blocked the car in which she had been riding from leaving. The evidence shows that the occupants were not trying to leave in the car. They were in the process of leaving the car to go into the garage apartment.

This case should be controlled by what the officers did, not what they might have done later.

The motion for rehearing should be granted and the judgment should be affirmed.

W. C. DAVIS, J., joins in this dissent.

DALLY, Judge, dissenting.

I quote the facts as stated in the panel opinion of the majority:

"Sheriff Maddox of Austin County was at the annual Sealy Firemen's Frolic when someone told him that Winnie Ebarb was carrying in her car some illegal pills and a handgun. He and several of his deputies, Sealy policemen, and the local District Attorney, who were also attending the Frolic, departed in two cars in search of Mrs. Ebarb. After driving around Sealy for awhile the car was spotted by the Sheriff and followed until it pulled into a driveway and stopped. The driveway was that of Mrs. Ebarb's son where she was staying. The car con-

tained Mrs. Ebarb, her son and daughter-in-law. The Sheriff and his companions in the search stopped their cars and went to Mrs. Ebarb's car. The Sheriff approached the passenger side where Mrs. Ebarb was sitting, identified himself and asked if he could search the car. She replied 'Well, certainly' and exited the car. As she was doing so the dome light came on and revealed a pistol on the front seat of the car. The car was searched and no drugs were found. The pistol was used in the instant prosecution."

None of the officers stopped nor detained the appellant—". . . the car was spotted by the Sheriff and followed until it pulled into the driveway and stopped." The record simply does not support a finding that the Sheriff or any of the officers stopped or detained the appellant or her son. The car was stopped voluntarily by the appellant's son near his apartment. The Sheriff and the other officers, as would any other citizen, had a right to be where they were; what law were they violating in being where they were? When the car door was opened either by the appellant or her son and the dome light came on the Sheriff and another officer saw the pistol in open view on the seat. The pistol was observed and recovered without a search. After observing the pistol in open view the officers had a perfect right to arrest the appellant and other occupants of the car.

The officers did not stop the automobile in which the appellant was a passenger. They used good judgment and waited until the automobile was stopped voluntarily; then the Sheriff asked a question as any citizen could have asked a question. If the appellant and her son had remained seated in the automobile and if the appellant had refused the Sheriff's request to search the automobile, which they had a perfect right to do, many different questions may have been raised depending on the action then taken by the officers. However, this appeal *should be decided on the facts in the record* and not questions that might have been raised in different circumstances.

I cannot agree that the majority are properly applying the well-known law stated to the facts of this case; therefore, I must dissent.

TOM G. DAVIS, and W. C. DAVIS, JJ., join in this dissent.