Floyd Ray GEARING, Appellant,

v.

The STATE of Texas, Appellee.

No. 906–83.

Court of Criminal Appeals of Texas, En Banc.

Feb. 13, 1985.

Neal Y. Pickett, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and J. Sidney Crowley, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted in a bench trial for possession of a firearm by a felon.

Punishment, enhanced by two prior convictions, was assessed at life imprisonment.

On appeal the Houston (14th) Court of Appeals affirmed the conviction, but because of error in assessment of punishment, the cause was remanded to the trial court for the reassessment of punishment. *Gearing v. State*, 685 S.W.2d 339 (Tex.App. —Houston [14th] 1983). Appellant's petition for discretionary review requested we review the Court of Appeal's ruling the trial court did not err in overruling "appellant's motion to suppress the evidence for the reason that the arrest and subsequent search of the appellant violated this Appellant's rights as guaranteed to him by the Fourth Amendment to the Constitution of the United States of America." We granted the petition on this basis.

On original submission we described the question as to whether the "detention" of appellant that led to the discovery of the pistol was lawful. This was the way the Court of Appeals described the question though appellant's third ground of error and his petition for discretionary review advanced his contention in the language quoted above. On original submission we reversed the Court of Appeals in a 5 to 4 decision. We granted the State's motion for rehearing to reconsider the admission into evidence of the pistol in question.

Sgt. Steven A. Vaughn of the Pasadena Police Department, a nine year veteran, was on duty in uniform from 10 p.m. July 19, 1981 until 6 a.m. on July 20th. He lived at the Sandstone Two Apartment Complex where he also served as Security Officer for his rent. In the parking lot of the apartment complex there had been 30 arrests in the last six months, three or four recent arrests that Vaughn described as narcotic related and one for burglary. During the graveyard shift on the date in question, Vaughn went home for "lunch." He left his apartment about 3 a.m. and drove his patrol vehicle about 300 feet or so in the parking lot when he observed a car parked in the parking lot area with its lights off and the motor running. He observed the windows were up and a man was "slouched" over or down in the driver's seat. The man was wearing a cowboy hat.

While Vaughn thought the man might be sleeping with the motor running, he also suspected that criminal activity might be afoot given the hour and recent arrests made in the same parking area, including one two nights before involving a suspected automobile theft. The suspected theft turned out to be a repossession of the car attempt which led to a further incident when the person arrested returned to threaten the owners of the car, Buddy and Holly Rogers, tenants of the apartment complex. Vaughn was aware of the incident and aware also of late night traffic of individuals into and out of the Rogers' apartment. Vaughn suspected narcotic dealings.

Vaughn stopped his marked patrol vehicle and with his flashlight approached the 1978 Lincoln automobile with its motor running. As he approached the man, identified as the appellant, in the car rolled down the window. Officer Vaughn asked appellant what he was doing there. Appellant replied he was there to see a friend, Holly Rogers. The Rogers' apartment was in another building and there were parking spaces much nearer to the apartment than where appellant was parked. Vaughn suspected appellant may have been there to harm the Rogers. Vaughn asked appellant to step out and give him some identification. As appellant got out, the dome light of the car came on, and with lighting in the parking area, and with Vaughn's flashlight shining toward appellant, Vaughn saw a pistol in a holster on the floorboard four or five inches out from the driver's seat. Appellant gave Vaughn his driver's license and stepped to the rear of the car. Vaughn called for a back-up unit. Officer Espinoza responded. When he arrived, appellant was handcuffed and frisked. Espinoza recovered the pistol from appellant's car. It was found to be loaded.

A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain his status quo

momentarily while obtaining more information. An occupant of an automobile is just as subject to a brief detention as is a pedestrian. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Shaffer v. State*, 562 S.W.2d 853 (Tex.Cr.App. 1978); *Johnson v. State*, 658 S.W.2d 623 (Tex.Cr.App.1983). Circumstances short of probable cause for an arrest may justify temporary detention for the purpose of investigation since an investigation is considered to be a lesser intrusion upon the personal security of the individual. *Leighton v. State*, 544 S.W.2d 394 (Tex.Cr.App. 1976); *Shaffer v. State*, supra. The totality of the circumstances surrounding the incident are looked to in determining whether the police conduct may be reasonable. *Shaffer v. State*, supra.

In *Johnson v. State*, supra, this Court wrote:

"In order to justify the intrusion, the law enforcement officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. Detention based on a hunch is illegal. *Williams v. State*, 621 S.W.2d 609 (Tex. Cr.App.1981). There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity is related to a crime. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Shaffer v. State*, 562 S.W.2d 853 (Tex.Cr.App.1978).

The Court of Appeals wrote:

"Based upon the totality of the circumstances, we find that the officer had sufficient reason to make an investigative stop. Vaughn testified about several recent arrests made in the Sandstone complex parking lot for burglary, theft and drug possession and trafficking. At such an early hour of the morning, and

under the circumstances detailed above Vaughn acted reasonably in attempting to secure more information from appellant. The circumstances would justify the officer's suspicion that some activity out of the ordinary was occurring or had occurred. Thus, the gun was subject to seizure when Vaughn spotted it in plain view while making a lawful investigative stop. *Ebarb v. State*, 598 S.W.2d 842 (Tex.Crim.App.1979); Ground of error three is overruled."

On original submission the majority of this Court wrote:

"The facts of this case do not indicate that any activity out of the ordinary was occurring or had occurred, nor that appellant was connected to any such activity, nor that any such activity was related to a crime. Indeed, the circumstances observed by the officer were as consistent with innocent activity as with criminal activity, and in fact there was no suggestion of criminal activity afoot whatsoever. It was error to overrule the motion to suppress."

Upon the State's motion for rehearing we have again examined the facts and the law applicable thereto.

In *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), we find the United States Supreme Court wrote:

"Second, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. See *Dunaway v. New York*, 442 U.S. 200, 120 n. 12, 99 S.Ct. 2248, 2255, n. 12, 60 L.Ed.2d 824 (1979); *Terry v. Ohio*, 392 U.S. 1, 31, 32–33, 88 S.Ct. 1868, 1885–1886, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring); id. at 34, 88 S.Ct. at 1886 (White, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring

some level of objective justification. *United States v. Mendenhall*, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion by Stewart, J.). The person approached, however, need not answer any question put to him; indeed he may decline to listen to the questions at all and may go his way. *Terry v. Ohio*, supra, 392 U.S. at 32–33, 88 S.Ct. at 1885–1886 (Harlan, J., concurring) id. at 34, 88 S.Ct. at 1886 (White, J., concurring).

"Asking for and examining Royer's ticket and his driver's license were no doubt permissible in themselves...." *Royer*, 103 S.Ct. at p. 1326.

We do not interpret Article I, § 9, Texas Constitution, to require more than the Fourth Amendment in the above described situation.

■ The instant case shows that Vaughn, a nine year veteran of the Pasadena Police Department, left his apartment about 3 a.m. on the date in question to return to duty. He was in police uniform and in a marked police vehicle. He was also the Security Officer for the apartment complex, was familiar with the criminal activity in the parking lot or lots thereof, and of recent arrests, etc. After driving 300 feet, he observed a 1978 Lincoln automobile parked without lights with the motor running, the windows rolled up, and an individual slouched down in the front seat. He considered the individual may have fallen asleep with the motor running and was in danger, and he was further suspicious of criminal activity being afoot, given the hour and other circumstances. Officer Vaughn approached the parked car to investigate the situation. As he did, appellant rolled down the window, and when asked what he was doing there, appellant stated he was there to see a friend, Holly Rogers. Vaughn knew threats had been made against the Rogers two nights before, and further suspected narcotic trafficking at the Rogers' apartment, and he had made recent arrests for narcotic offenses on the parking lot in question. Officer Vaughn also testified he didn't know

who else or what might be in the automobile, and for his personal safety he didn't want to be in position where the car door could be swung against his person. At this point the officer, being where he had a right to be, asked appellant to step out and show him some identification. When appellant stepped out, the officer saw a pistol in a holster. We agree upon further study with the Court of Appeals that Vaughn acted reasonably in attempting to secure more information, and that the pistol was properly subject to seizure when Vaughn saw it in plain view under the circumstances described. The pistol was properly admitted into evidence.

Our State's Attorney urges also that the error, if any, was not properly preserved. The appellant filed a pre-trial motion to suppress evidence. When presented, the trial judge suggested it be "carried along" with the jury case, and passed upon when the issue was raised. Appellant's counsel agreed. No ruling was then obtained on the motion to suppress. Later trial by jury was waived. At the bench trial when the pistol was offered appellant's counsel expressly stated, "No objection." After the conclusion of all the testimony, the trial judge permitted oral argument on the motion to suppress and overruled it.

■ It is settled that when a pre-trial motion to suppress evidence is overruled, the accused need not subsequently object to the admission of the same evidence at trial in order to preserve error. *Ebarb v. State*, 598 S.W.2d 842 (Tex.Cr.App.1980); *Riojas v. State*, 530 S.W.2d 298 (Tex.Cr.App.1975); *Harryman v. State*, 522 S.W.2d 512 (Tex.Cr.App.1975). However, when the accused affirmatively asserts during trial he has "no objection" to the admission of the complained of evidence, he waives any error in the admission of the evidence despite the pre-trial ruling. *Harris v. State*, 656 S.W.2d 481 (Tex.Cr.App.1983); *Mayberry v. State*, 532 S.W.2d 80 (Tex.Cr.App. 1976); *McGrew v. State*, 523 S.W.2d 679 (Tex.Cr.App.1975).

In the instant case the appellant failed to obtain a pre-trial ruling on the said motion,

and stated "no objection" at trial upon offer of the pistol. It would appear he waived the error, if any, unless it can be argued that in permitting counsel to argue the pre-trial motion after trial and ruling upon the same, the court in an unorthodox manner allowed the preservation of error, if any. Be that as it may, no error in our opinion is presented upon consideration of the merits.

The State's motion for rehearing is granted, our previous order of reversal is withdrawn, and the judgment of the Court of Appeals is affirmed.

MILLER, J., dissents.

CLINTON, Judge, dissenting.

On any other day, having discovered that "error, if any, was not properly preserved," this Court would simply say that the court of appeals should not have written on the question claimed to be presented, and dispose of the cause on that basis. *Turner v. State,* 662 S.W.2d 357 (Tex.Cr.App.1984); see *Laday v. State,* — S.W.2d —— (Tex. Cr.App. No. 399–84, delivered January 9, 1985). Today, however, the majority not only gives full treatment to the Fourth Amendment issue it believes to have been waived by appellant and finds itself in agreement with the opinion of the court of appeals, but also it gratuitously adds: "We do not interpret Article I, § 9, Texas Constitution, to require more than the Fourth Amendment in the above described situation." Respectfully, I dissent.[1]

Since *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court usu-ally has not made any distinction in law between a "stop and frisk" situation and one where the citizen is already at rest. Although it quotes from the opinion in just such a case, the majority does not explain why on the facts of the matter *Johnson v. State,* 658 S.W.2d 623 (Tex.Cr.App.1983) is not controlling here.

Also we are left to wonder by what authority Officer Vaughn "asked appellant to step out and show him some identification." That Vaughn was "where he had a right to be" is not enough under *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). The majority would have it that quoted portions of the plurality opinion in *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), permit what Vaughn did here.[2]

There is more to the first paragraph than is excerpted, *viz:*

"He may not be detained even momentarily without reasonable objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. [Citation to *Mendenhall* omitted.] If there is no detention—*no seizure within the meaning of the Fourth Amendment*—then no constitutional rights have been infringed."[3]

It is clear from *Brown v. Texas,* supra, that Vaughn "seized" appellant.

"When the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment." *Id.,* 443 U.S. at 50, 99 S.Ct. at 2640.

1. For reasons deemed sufficient by the judge before whose court this case was tried, hearing argument and ruling on a pretrial motion to suppress fruits of the seizure at issue here were deferred until all testimony and evidence had been adduced. Obviously the trial court did not determine that appellant had waived his motion by voicing "no objection" to admitting a holster, magazine and pistol after their chain of custody had been established. We are informed by the local district attorney that the trial court "specifically overruled the appellant's motion to suppress because the officer's actions in checking out the appellant were justified by seeing someone slouched down in a car at 3:00 a.m. with the motor running and lights off (R. IV–24)." Thus, to find waiver here is to ambush the trial judge as well as appellant.

2. However, its exposition is somewhat misleading, for the material does not appear in juxtaposition. The paragraph beginning "Second" is one of several "preliminary observations" made in section II of the opinion, 103 S.Ct. at 1324, whereas the next paragraph containing a partial sentence is from section III.

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

The unanimous opinion in *Brown v. Texas* further pointed out that the Supreme Court has "required the officers to have a reasonable suspicion, based on objective facts, that the individual *is involved in criminal activity*," and then found that "[t]he flaw in the State's case is that none of the circumstances *preceding the officers' detention* of appellant justified a reasonable suspicion that he was *involved in criminal conduct." Id.*, 443 U.S. at 51, 99 S.Ct. at 2641.

The partial sentence reproduced by the majority is written in the following context:

"First it is submitted that the entire encounter was consensual and hence Royer was not being held against his will. We find this submission untenable. Asking for and examining Royer's ticket and driver's license were no doubt permissible in themselves, but when the officer identified themselves as narcotics officers, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for purposes of the Fourth Amendment. These circumstances surely amount to a show of official authority such that 'a reasonable person would have believed he was not free to leave.' *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (Opinion of Stewart, J.)."

Therefore, even under Fourth Amendment law the majority is wrong, and that is all appellant contended for in his petition for discretionary review. His first ground for review asserts that the trial court erred "for the reason that the arrest and subsequent search ... violated [his] right as guaranteed by the Fourth Amendment to the Constitution of the United States." He does not claim that the court of appeals based its decision on state law. The State does not advance any in the motion for rehearing.[4] Thus, this Court is not called

on to interpret Article I, § 9, and should not do so in the first instance. See *Eisenhauer v. State*, 678 S.W.2d 947, 948 and 955 (Tex.Cr.App.1984).

For all those reasons I dissent.

TEAGUE, Judge, dissenting.

This Court granted the petition for discretionary review that was filed on behalf of Floyd Ray Gearing, appellant, in order to review the published opinion of the court of appeals, in which that court held that the detention of appellant by a police officer, that led to the recovery of the pistol for which appellant was prosecuted, was lawful.

On original submission, a majority of this Court reversed the judgment of the court of appeals. It held that the police officer who arrested appellant acted unlawfully. Relying upon the facts of the case, as stated in the opinion by the court of appeals, I dissented without opinion.

A majority of this Court on rehearing now informs us that the opinion of the court of appeals is factually incorrect.

It is now axiomatic that an appellate court judge should never misstate the facts of a case in an opinion he authors for his particular court. Just recently, in *Laday v. State*, 685 S.W.2d 651 (Tex.Cr.App.1985), this Court implicitly pointed out that if a case is assigned to a particular appellate court judge, he, and no other person, including any member of his staff, has the responsibility to read the entire record on appeal, from the first to the last page, in order that the opinion he authors for his court will be factually correct. Otherwise, if an opinion erroneously states the facts of a case, this might not only cause the author of the opinion to be embarrassed, such can also cause his fellow judges to be embarrassed. Of course, it can cause other appellate court judges who rely on the opinion to also be embarrassed. I confess. I am embarrassed, because had the opinion of the court of appeals correctly stated the facts of the

4. Indeed, the district attorney submits the detention may be upheld under the "public safety" exception of *New York v. Quarles*, ——— U.S. ———, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

case, I would not have voted to dissent to the majority opinion on original submission.

Judge Odom, the author of the majority opinion on original submission, in ordering appellant's conviction reversed, adopted the following factual statement that is in the opinion of the Houston [14th] Court of Appeals. See *Gearing v. State*, 685 S.W.2d 326 (Tex.App.—Houston [14th] 1983): "Appellant was 'slouched over' the steering wheel ..."

However, but as Presiding Judge Onion, the author of the majority opinion on rehearing, now informs us, when confronted by the arresting police officer, appellant was *not* " 'slouched' over the steering wheel" of the motor vehicle in which he was sitting.

It is my legal belief that there is a world of difference as to what a police officer in the field might do when he sees an individual "slouched over a steering wheel" versus if he sees an individual "slouched down in the driver's seat [of the motor vehicle in which he is sitting] wearing a cowboy hat."

I believe that when an officer in the field sees a civilian " 'slouched' over the wheel of an automobile," at an early morning hour, with the windows of the vehicle rolled up, the lights of the vehicle off, and the motor of the vehicle running, he should investigate to make the determination whether the individual might be suffering from anything ranging from a heart attack to being passed out because he had consumed too much intoxicating liquor or other substances, or is attempting to commit suicide. In that instance, this Court's decision of *Hazel v. State*, 534 S.W.2d 698 (Tex. Cr.App.1976), and like decisions, control whether the investigating officer has the right to investigate. Under the above circumstances, I believe he does have the right to make a thorough investigation of the situation.

In this instance, however, other than to ascertain who appellant was and why he was where he was situated, the arresting officer had no other lawful authority to act. There is no evidence in the record on appeal that appellant was either " 'slouched over the steering wheel' " of the vehicle in which he was sitting or that his "head was bobbing and weaving" when he was sitting in his vehicle.

On original submission, a majority of this Court correctly stated the following: "The facts of this case do not indicate that any activity out of the ordinary was occurring or had occurred, nor that appellant was connected to any such activity, nor any such activity was related to a crime. Indeed, the circumstances observed by the officer were as consistent with innocent activity as with criminal activity, and in fact there was no suggestion of criminal activity afoot whatsoever." In light of the correct version of the facts, I agree with what a majority of this Court stated on original submission. Under the facts and circumstances of this case, once the arresting officer had obtained identification and reasonable explanation from appellant, as to who he was and why he was where he was situated, without more, the officer did not have the right to order appellant from his vehicle, much less handcuff him. See *Glass v. State*, 681 S.W.2d 599 (Tex.Cr. App.1984). Appellant's conviction should be reversed, if the error was perfected.

But, did appellant waive his error? The record on appeal reflects that when the pistol that was seized by the arresting officer was offered into evidence by the prosecuting attorney, appellant's counsel stated that he had "no objection" to its admission into evidence. It was after this statement and event that the trial court overruled the appellant's motion to suppress the evidence. Because of the sequence of events, I do not believe that appellant preserved his ground of error for review. Thus, whatever the majority of this Court states in its opinion on rehearing, regarding appellant's unlawful detention, as well as the search and seizure that thereafter occurred, is pure dictum.

Notwithstanding that I find that the majority is correct in holding that appellant failed to preserve his error, I must dissent to its holding that appellant's detention and

the ensuing search and seizure were lawful. Such is pure dictum.