We reverse the judgment and remand the cause for a trial on the merits.

LARSEN, Justice, concurring.

I agree with the majority's reasoning in this case, but I write to emphasize that an enforceable agreement under TEX.R.CIV.P. 11 could have been created by recitation on the record in open court, coupled with the trial judge's statement of present intent that judgment be at that time rendered in accordance with the recited terms. *Buffalo Bag Co. v. Joachim,* 704 S.W.2d 482, 484 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Apparently, the parties here attempted to create an enforceable agreement by this method, but nothing in the appellate record reflects the terms of that agreement in any way. Moreover, Appellee failed to file a brief on appeal, which certainly does not help his cause. Under these facts, I agree reluctantly that Appellee failed to meet the requirements of Rule 11 and Appellant is entitled to reversal of the judgment and another trial on the merits. I believe, however, that a few minutes spent hammering out the details of the parties' agreement, a full recital of those terms before the trial court on the record, and the trial court's statement from the bench that "judgment is rendered accordingly" would have saved an appeal and second jury trial in this case, with its attendant waste of judicial resources. *Id.* Hastily-wrought agreements in the heat of jury trial are a frequent, and generally desirable, part of the judicial process; a little extra time and attention by counsel to insure enforceability would avoid the abuse of the process we see here. Nevertheless, I believe the law compels the outcome reached by the majority.

Richard Wayne **QUEBODEAUX**,
Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–94–001 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Sept. 8, 1994.

Decided Dec. 21, 1994.

Discretionary Review Refused April 5, 1995.

James L. Rucker, II, Groves, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

Appellant waived trial by a jury and pleaded not guilty to the trial court upon an indictment for the felony offense of Possession of a Controlled Substance. The trial court found appellant guilty and assessed punishment at thirty-six (36) years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant urges three points of error before us, *viz:*

Point of Error 1: The trial court erred by allowing inadmissible hearsay testimony into evidence during a suppression hearing, over objection, which was allegedly uttered by an undisclosed nontestifying witness.

Point of Error 2: The trial court erred by not suppressing the fruits of the search in that there were not sufficient reliable facts from a reliable source to issue the teletype which was the basis of the stop.

Point of Error 3: The trial court erred in applying Tex.Code Crim.Proc. § (sic) 14.03 to justify its denial of the motion to suppress.

We will discuss the points of error in reverse order. Point of error three ar-

gues that because the trial court based its ruling on the code provision in question, to the apparent surprise of appellant, appellant was prejudiced in that appellant was unable to argue the inapplicability of said code provision. As to this specific argument, which we see as the crux of point of error three, appellant provides absolutely no case or statutory law in support thereof. As such, point of error three suffers from inadequate briefing in violation of TEX.R.APP.P. 74(f). In addition, it is well settled case law that the mere fact that a correct ruling is given by the trial court for the wrong reason will not result in a reversal, and said correct ruling will not be disturbed on appeal, if it is correct on any theory of law applicable to the case. *Jones v. State,* 833 S.W.2d 118, 125 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Calloway v. State,* 743 S.W.2d 645, 651–652 (Tex.Crim.App.1988).

As the trial court's ruling on appellant's motion to suppress was a correct one, as will be discussed *infra,* we find that no error occurred. Point of error three is overruled.

Prior to discussing the merits of point of error two, a rendition of the facts surrounding the discovery of the contraband as well as a description of the various pretrial proceedings is in order. Prior to trial, appellant filed an instrument entitled, "Motion For Discovery Of Informant's Identity And Request For Production Of Information On Informant's Location And Prior Record." Appellant also filed three motions to suppress evidence with each complaining of the "stop, detention and arrest" of appellant and the search of the vehicle appellant was operating on November 13, 1991.

The record before us reflects that on January 25, 1993, the trial court conducted the first of two pretrial hearings on appellant's suppression motions. A single witness, Port Arthur Police Officer Gary DeFrancis testified. Officer DeFrancis was the arresting officer and testified that at approximately 10:45 p.m. on November 12, 1991, and again at approximately 12:05 a.m. on November 13, 1991, the Bridge City Police Department issued a "be on the lookout" message to area law enforcement agencies concerning a gold Mazda RX7 automobile, with a particular license plate number, being driven by a man named Quebodeaux. The first message contained information that the subject was in possession of "150 hits of L.S.D. as well as an illegal knife." The second message indicated that the subject was in possession of two knives instead of only one, as well as the L.S.D.

Officer DeFrancis then testified that at approximately 12:33 a.m., he observed a vehicle matching the description contained in the Bridge City Police teletype. The vehicle entered the parking lot of a Port Arthur night club, the Barbary Coast. DeFrancis then stated that he approached the vehicle, identified appellant as the driver of the vehicle, and identified a male passenger as Rocky Hudson. The following testimony was then elicited from Officer DeFrancis by the State:

Q. (State) Did you ask Mr. Quebedeaux (sic) if, in fact, he was the owner of the vehicle in question?

A. (DeFrancis) Yes, I did.

Q. What was his response to you?

A. He told me that he had recently purchased it.

Q. Once you spoke with Mr. Quebedeaux (sic), determined his identity and determined that he was, in fact, the owner of the vehicle—or claimed to be the owner of the vehicle, did you ask him to execute a consent to search the vehicle?

A. I first asked him if he would allow me to search his vehicle. He verbally agreed to it.

Q. Did you later execute a written consent to search and have him sign it?

A. Yes, it is our policy that when they do consent, we also request that they sign a consent paper.

Q. Do you use a standardized form for that purpose?

A. Yes, we do.

Q. Do you keep forms for that with you while you're on patrol?

A. Yes, we do.

Q. Did Mr. Quebedeaux (sic) in the presence of yourself and the other officers sign one of those forms prior to your actually searching his vehicle?

A. Yes, he did.

We note the fact that appellant makes no complaint as to the voluntariness of the consent to search. At any rate, the written consent to search form executed by appellant was admitted into evidence without objection. DeFrancis testified that a search of the vehicle turned up both the L.S.D. and the illegal knife as described in the Bridge City Police teletype. Further germane testimony of Officer DeFrancis on redirect examination occurred as follows:

Q. (State) Of course, when you approached, you were not relying upon the confidential informant because you did not know of their existence, did you?

A. (DeFrancis) No, sir, I did not, no.

Q. You were relying upon the information passed on by one police agency to another agency; is that correct?

A. That's correct.

Q. In your experience, have you acted on information from other police agencies before?

A. Yes, I have.

Q. In your knowledge and experience, have other agencies acted upon information from you?

A. Yes.

Q. When you identified Mr. Quebedeaux (sic) and determined he was the owner of the vehicle, if he at that point had asked you if there was any reason to hold him and he could leave, what would you have done?

A. I would have had no choice but to let him leave.

Q. You didn't have any reason to hold him at that time, did you?

A. Not specifically on that piece of paper that was sent to us, the attempt to locate that was broadcast.

Q. And if, in fact, Mr. Quebedeaux (sic) had refused to allow you to search the vehicle by executing the consent, would you have had, in your opinion, a right to search the vehicle?

A. I couldn't have searched it.

■ The theme underlying a significant portion of appellant's appeal is that appellant was under arrest prior to consenting to the search of the vehicle. An examination of Officer DeFrancis's testimony clearly indicates that such was not the case. Appellant's position on the matter is represented by the following portion quoted from his brief: "In the instant case, appellant was ordered to remain in his vehicle until other officers arrived on the scene. Clearly appellant was under restraint when, at gunpoint, he was told to freeze and to place his hands on the van." The record references provided to us by appellant are to the recross-examination of Officer DeFrancis by appellant's counsel, and is reproduced as follows:

Q. (Trial Counsel) Officer, did you tell Mr. Quebedeaux (sic) to stay in his vehicle until you approached it and determined if it was safe for you to approach?

A. (DeFrancis) Yes, we did.

Q. So, you told Mr. Quebedeaux (sic) not to leave his vehicle.

A. At that moment in time when I was alone, I did tell him—

Q. (Interrupting) At that point you had detained him, had you not? You had begun your detention.

A. Uh-huh.

\* \* \* \* \* \*

Q. Was Mr. Quebedeaux (sic) free to leave at that point when you detained him and told him to stay in his car?

A. At that point in time, he was not for my safety. He was not allowed to get out of the car.

■ It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App. 1991). An occupant of an automobile is just as subject to a brief detention as is a pedestrian. *See Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Gearing v. State,* 685 S.W.2d 326, 328 (Tex.Crim. App.1985). In the instant case, it is clear from the testimony of Officer DeFrancis that

he was conducting a classic "Terry" temporary investigative detention. Once the minimally intrusive acts of identifying appellant and determining ownership of the vehicle were accomplished, DeFrancis immediately asked appellant if he would consent to a search of the vehicle. The testimony of Officer DeFrancis simply does not indicate that appellant was under arrest at any point, including the time it took for DeFrancis to make sure it was safe for appellant to exit the vehicle. The contention that appellant was held at "gunpoint" and told to "freeze and place his hands on the van" is not to be found anywhere in the record before us. What is clear from the testimony is that appellant gave Officer DeFrancis consent to search the vehicle.

■ A consent to search is one of the established exceptions to the requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Under this concept, the protections afforded by the Fourth Amendment of the United States Constitution and TEX. CONST. art. I, § 9 may be waived by an individual when he consents to a search of his person or property. *Reyes v. State*, 741 S.W.2d 414, 430 (Tex.Crim.App. 1987). Appellant's arguments, and consequently his authorities, under his second point of error entirely misplace the context of the encounter between appellant and Officer DeFrancis. We turn now to the question of the legal significance of the Bridge City teletype that set the sequence of events leading up to the search of appellant's vehicle, and appellant's subsequent arrest, in motion.

On November 30, 1993, the trial court conducted the second motion to suppress hearing. The sole fact-witness called by the State was Officer Billy Permenter of the Bridge City Police Department. It was Officer Permenter who initiated the sending of two teletype messages to area law enforcement agencies. Officer Permenter testified that on the night of November 12, 1991, he was on patrol and dispatched to the apartment of a Ms. Vicky Gordy in regards to a family disturbance. Upon arriving at the apartment, Officer Permenter spoke with Ms. Gordy who advised the officer that appellant lived at the apartment with her, and that she and appellant had just had a fight and appellant had left the scene. Permenter further stated that prior to November 12, 1991, he and other Bridge City Police officers had received information from, *inter alia*, appellant's landlady that appellant and Ms. Gordy were dealing drugs, specifically L.S.D., from the apartment. Permenter considered the landlady to be a credible informant as information from her had been reliable on past occasions.

Permenter further testified that at some point during his interview with Ms. Gordy she informed Permenter that when appellant left the apartment he had in his possession "several hits of LSD plus two knives." Permenter got a description of the vehicle appellant was driving and the license plate number. Permenter then placed the information regarding the drugs, the description of the vehicle, and the weapons in the teletype which was then broadcast to all area law enforcement agencies. It was this same teletype message that Officer DeFrancis had knowledge of when he approached appellant's vehicle some time later that night. When asked what his primary concern was for broadcasting the teletype message, Officer Permenter replied that it was for the safety of any officers that might have stopped appellant as Permenter was aware of appellant's prior felony convictions for Aggravated Assault on a Peace Officer out of Orange County.

The United States Supreme Court has held that if a wanted flyer has been issued on the basis of articulable facts supporting a reasonable suspicion that the person wanted has committed an offense, then reliance on that flyer justifies a stop to check identification, to pose questions, or to detain the person briefly while attempting to obtain further information. *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604, 614 (1985). Further, the Court held that assuming that the police can make a "Terry" stop in reliance on a flyer, the evidence uncovered in the course of the stop is admissible if the police who issued the flyer possessed a reasonable suspicion justifying the stop, so long as the stop that occurred was not significantly more intrusive than would have been permitted the issuing department.

*Hensley,* 469 U.S. at 233, 105 S.Ct. at 682–83, 83 L.Ed.2d at 615.

In the instant case, the issuing agent, Officer Permenter, had reasonable suspicion to believe that appellant, a suspected drug dealer and convicted assailant of police officers, was in possession of both narcotics and illegal weapons. This information was provided to Officer Permenter by a reliable source, appellant's landlady, and by a person appellant lived with, Vicky Gordy. Furthermore, as discussed above, the intrusion by Officer DeFrancis was minimal at most; certainly it was no more intrusive than would have been permitted by Officer Permenter himself. All this is to say that we find no error in the trial court's denial of appellant's suppression motions. Point of error two is overruled.

Appellant's first point of error is multifarious in that it complains not only of the allegedly "inadmissible hearsay," but also of the failure to disclose the identity of appellant's landlady and an unnamed tenant, both of whom appellant characterizes as confidential informants. The record reflects that when appellant was made aware of the existence of the landlady and the "unnamed tenant," at the second suppression hearing, appellant made no request for their identities in order to subpoena them, nor did he move for a continuance in order to investigate these possibly new sources of information. We therefore find that any complaint concerning the failure to disclose or provide the name of the landlady or the "unnamed tenant" was waived by appellant. TEX.R.APP.P. 52(a).

With regard to the allegedly inadmissible hearsay testimony, the record before us reflects the following direct examination testimony of Officer Permenter took place:

Q. (State) And did you have occasion to go back to that apartment yet again later that same evening?

A. (Permenter) Yes.

Q. Under what circumstances did you go back?

A. The landlady called us back and told us that a tenant had told her that Vickie (sic) was bragging about that we had missed—

[Trial Counsel]: Your Honor, I would object. This is all hearsay at this time.

The Court: I'm going to sustain the objection for the purpose of establishing that it is true, whatever it is the tentant (sic) said, but permit the testimony to come in for the purpose of determining what was the total amount of information in the peace officer's mind in determining whether or not they acted reasonably in causing a detention of the defendant. That's on the subject of probable cause.

[State]: May we continue, Your Honor?

The Court: Yes, sir.

Q. You received information from the landlady?

A. Right. That she had been—Vickie (sic) was bragging about that we had missed the dope in the house.

Q. Did you go back and look again?

A. Yes, sir. We went back and got another consent to search and didn't find anything the second time.

It is apparent from the testimony that the information Officer Permenter acquired from the landlady via the "unnamed tenant" was of no consequence to the detention and subsequent arrest of appellant. No contraband was located inside the apartment. Moreover, Officer Permenter had previously teletyped the first message to area law enforcement agencies. The only difference between the first teletype and the second teletype was the additional information of a second knife in appellant's vehicle. Furthermore, the trial court's comment to appellant's trial counsel indicates that the judge may have been imposing the greater burden of probable cause on the State when the burden, as announced in *Hensley, supra,* was that of reasonable suspicion based on articulable facts. No error was demonstrated by the admission of the testimony in question during the second motion to suppress hearing. Point of error one is overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.