In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00040-CR
______________________________


THURMAN ROSS MAYFIELD, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30749-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Thurman Ross Mayfield appeals from his conviction of two counts of aggravated robbery. 
The jury assessed his punishment at fifty years' imprisonment on each count. The sentences are
concurrent. He contends the trial court erred by overruling his motion to suppress evidence obtained
from a suggestive photographic lineup. 
            The evidence shows that the victim in one count, Ricky Crain, was approached while walking
home from his job by a black male who walked and talked with him for a couple of minutes. The
man then pulled a knife on Crain and took his sun visor, shoes, and pager. Crain was not carrying
any money. 
            The following day, June 15, 2003, the victim in the other count, Craig Ansel, was approached
by a black male while waiting at the bus terminal. The man chatted with Ansel for a while and then
pulled a knife on Ansel and demanded money. Ansel gave him his wallet. Mayfield was arrested
almost immediately, and Ansel identified him as the robber.
            On June 16, police detective David Cheatham took a photographic array of six individuals
to Crain's home. Crain identified Mayfield as the robber. The contentions raised in this appeal do
not question Ansel's identification of Mayfield, but only Crain's identification of Mayfield as the
person who robbed him.
            After a pretrial hearing, the trial court denied Mayfield's motion to suppress. At trial, Crain
identified Mayfield as the robber. Counsel did not object to the in-court identification. 
            We have recently addressed a similar situation in Wallace v. State, 75 S.W.3d 576, 584 (Tex.
App.—Texarkana 2002), rev'd on other grounds, 106 S.W.3d 103 (Tex. Crim. App. 2003).             The underlying basis for a complaint about identification is that a pretrial identification
procedure may be so suggestive and conducive to mistaken identification that subsequent use of that
identification at trial would deny the accused due process of law. Stovall v. Denno, 388 U.S. 293
(1967). In Wallace, we recognized that, generally, the defendant's attack is against an in-court
identification as being tainted by an impermissibly suggestive pretrial identification procedure. In
this case, Mayfield filed a motion to suppress the identification, with the hearing held outside the
jury's presence. See Barley v. State, 906 S.W.2d 27, 32 (Tex. Crim. App. 1995). As part of that
proceeding, counsel also complained that any in-court identification would be tainted by the pretrial
identification procedure. Specifically, counsel stated, "Basically we're just asking that you suppress
the photo I.D. We're asking that you suppress any evidence -- I mean any testimony from the witness
based on the photo I.D. due to the suggestive nature of it." We do not approve of the array used in
this case. Using a photograph of the suspect wearing distinctive jail clothing along with five other
individuals wearing normal clothing in the array is impermissibly suggestive. See Turner v. State,
614 S.W.2d 144, 146 (Tex. Crim. App. [Panel Op.] 1981). The more serious question is whether
that objection has been waived. 
            In Wallace, the defendant objected to the introduction of the photographic array, but did not
object to the in-court identification of the defendant by the witnesses who had viewed the array. 
Wallace, 75 S.W.3d at 584. When a defendant is contending the in-court identification was 
improperly suggested by a photographic array, we recognized in Wallace that there should have been
a trial objection to such identification made by the witnesses who viewed the array. Id. The failure
to complain about or object to in-court identifications constituted a procedural default and waiver
of any complaint on appeal. In re G.A.T., 16 S.W.3d 818, 827 (Tex. App.—Houston [14th Dist.]
2000, pet. denied). Here, the events are different. When the photographic array was offered at trial,
counsel stated, "No objection," thereby waiving the previous objection made at the suppression
hearing to such an array. However, when Crain identified Mayfield as the robber, counsel made no
comment. The question is whether counsel's waiver of the objection to introduction of the
photographic array also effected a waiver of the objection to the in-court identification based on the
impermissible suggestiveness of that array. We find that it did not. 
            When a pretrial motion to suppress evidence is overruled, the defendant need not
subsequently object at trial to the same evidence in order to preserve error on appeal. Wyle v. State,
777 S.W.2d 709, 715 n.5 (Tex. Crim. App. 1989); Livingston v. State, 739 S.W.2d 311, 334 (Tex.
Crim. App. 1987); Gearing v. State, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985); Welch v. State,
993 S.W.2d 690, 694 (Tex. App.—San Antonio 1999, no pet.); Bennett v. State, 831 S.W.2d 20, 21
(Tex. App.—El Paso 1992, no pet.); see Tex. R. Evid. 103 (a)(1). However, when the defendant
affirmatively asserts during trial that he or she has "no objection" to the admission of the
complained-of evidence, he or she waives any error in the admission of the evidence despite the
pretrial ruling. Livingston, 739 S.W.2d at 334; Gearing, 685 S.W.2d at 329; Montes v. State, 876
S.W.2d 538, 539 (Tex. App.—El Paso 1994, no pet.). 
            We conclude that, even though the complaint to the introduction of the photographic array
itself was waived by the "[n]o objection" comment, the complaint about the taint arising from that
array was not. That objection had been properly presented during the suppression hearing and was
not affirmatively waived during trial and remained viable. Therefore, we will analyze the
admissibility of the in-court identification of Mayfield by Crain. 
            Determining the admissibility of an in-court identification involves a two-step analysis: 
(1) whether the out-of-court identification procedure was impermissibly suggestive, and (2) whether
that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. 
Simmons v. United States, 390 U.S. 377, 384 (1968); Barley, 906 S.W.2d at 33. A defendant bears
the burden of establishing by clear and convincing evidence that the pretrial identification procedure
was impermissibly suggestive. Barley, 906 S.W.2d at 33–34. The analysis requires an examination
of the totality of the circumstances surrounding the identification. Id. at 33; Morrow v. State, 139
S.W.3d 736, 741 (Tex. App.—Texarkana 2004, no pet.). We have found that the procedure was
impermissibly suggestive and that Mayfield has met the first step in the analysis. 
            In considering the second factor, 
five non-exclusive factors should be "weighed against the corrupting effect of any
suggestive identification procedure in assessing reliability under the totality of the
circumstances": (1) the opportunity of the witness to view the criminal at the time
of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior
description of the criminal; (4) the level of certainty demonstrated by the witness at
the confrontation, and (5) the length of time between the crime and the confrontation.

Ibarra v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999); see Neil v. Biggers, 409 U.S. 188,
199–200 (1972).
            We are to consider the five Biggers factors, all issues of historical fact, deferentially in a light
favorable to the trial court's ruling. Ibarra, 11 S.W.3d at 195. The factors, viewed in this light, are
then to be weighed de novo against "the corrupting effect" of the suggestive pretrial identification
procedure. Id. at 195–96; Loserth v. State, 963 S.W.2d 770, 773–74 (Tex. Crim. App. 1998).
            Even though we have concluded that the identification procedure was impermissibly
suggestive, we find that it did not create a substantial likelihood of irreparable misidentification. The
record clearly demonstrates that the in-court identification by Crain was of an independent origin. 
Crain testified unequivocally that his identification was based on his observations at the time of the
offense. He testified he walked and talked with the defendant, in the light of day, for several minutes
before being robbed, and he saw the robber's face clearly. Crain testified that there was "[n]o doubt"
that Mayfield was the robber and that he remembered Mayfield "[f]rom that day that it happened." 
Crain provided a description of the robber and the clothing he was wearing that was consistent with
Mayfield's actual appearance. Crain's in-court identification occurred approximately nine months
after the robbery. Based on the facts recited above, the trial court could reasonably conclude Crain
had an adequate opportunity to observe Mayfield and formulate a basis for his in-court identification. 
Weighing this evidence of reliability against the suggestiveness of the pretrial identification
procedure, we conclude that no substantial risk of irreparable misidentification was created to deny
Mayfield due process. See Simmons, 390 U.S. at 384. The contention of error is overruled.
            We affirm the trial court's judgment. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 12, 2004
Date Decided:             January 4, 2005

Publish



 counsel answered
affirmatively; counsel further volunteered the information that Hollis had been sentenced to twenty
years' imprisonment on that charge and that, with the assistance of the district attorney's office,
Gordon was able to have Hollis "bench warranted" from prison to testify at trial. The only reason
that was given by the trial court and that appears in the record in this case (for requiring Hollis to
testify in jail clothes) was, "I don't want to interfere with the policy of another department." 

 The State now suggests that the trial court might have determined that Hollis presented a
flight risk because he had already been sentenced to a prison term. The State further suggests the
reason behind the sheriff's policy of requiring jail inmate witnesses to testify in uniforms is that "a
witness who is incarcerated at the time of the testimony could attempt to escape incarceration before
or after testifying, while unshackled or changing clothes." While the State's suggestions may be
correct, the record before us does not reveal any indication that the trial court factored such
considerations into the reason for reaching its decision. Instead, the sole reason given by the trial
court is that the court did not want to interfere with another department's internal policies. Nothing
suggests that the court made any independent decision, but instead relied solely on the sheriff's
department's policy. We conclude such a rationale, absent additional considerations expressly
supported by the appellate record, is insufficient to support a trial court's decision to require an
inmate to wear jail clothing while testifying on behalf of the accused. Therefore, the trial court erred.

 On direct examination by Gordon's counsel, Hollis admitted that he had been convicted of
delivery of a controlled substance and received a twenty-year sentence. Such testimony would also
have been a proper matter of impeachment by the State on cross-examination, regardless of the
witness' attire. See Tex. R. Evid. 609. Therefore, it was inevitable that the jury would find out
Hollis was a convicted felon and had been brought from prison to testify on Gordon's behalf. It is
quite doubtful that Hollis' appearance in jail clothing would have had any greater impact on the jury's
credibility determination than simply hearing Hollis himself admit to being a convicted drug dealer. 
Moreover, the Texas Court of Criminal Appeals has required, in a case similar to this one, that the
appellate record must disclose harm. Kimble v. State, 537 S.W.2d 254, 255 (Tex. Crim. App. 1976). 
Our review of the record reveals no such harm.

 Additionally, like the court in Kimble, we have reviewed the record and have concluded the
evidence against Gordon is quite strong. We therefore conclude beyond a reasonable doubt that the
trial court's error of requiring Hollis to testify in a jail uniform and shackles did not contribute to
Gordon's conviction or punishment. 

 We overrule Gordon's final point of error and affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 30, 2008

Date Decided: July 16, 2008


Publish



1. Merrell testified Muckleroy and Hollis met at a convenience store located in Gregg County,
Texas. 
2. Merrell later identified State's Exhibit 3 as being the same cocaine he had taken from
Muckleroy after the latter purchased it from Hollis. State's Exhibit 3 was admitted during Cline's
testimony. 
3. Merrell had received previous information that Gordon might likely be one of Hollis' drivers
in the drug trade.