

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LORENZO CARREON, | § | No. 08-12-00196-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 120th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20100D04925) |
| | § | |

**O P I N I O N**

Appellant, Lorenzo Carreon, was indicted for and convicted of the murder of Frank Edward Jeffery, from which he now appeals. We affirm.

**BACKGROUND**

Two witnesses who saw Appellant on the evening of August 1, 2010, described him as appearing nervous while initially walking from his apartment to a store, and speaking angrily on his cell phone, carrying and swinging a four-to-five inch knife, in his kitchen and "hitting something," cursing, shouting, and knocking things down. Appellant "seemed . . . very, very angry," "did not seem right in the head," looked like he was thinking about something, and "looked crazy" to them.

When Appellant called his brother, Salvador, at approximately 5 p.m. or thereafter the following day, August 2, 2010, he eventually told Salvador that he had argued with Lourdes Barrio, and then stated that he had been in a fight and had possibly killed someone. Salvador recognized that Appellant had been drinking and, not believing Appellant, instructed him to call paramedics.

At approximately 3:45 p.m. on the afternoon of August 3, 2010, a maintenance technician at the Alamito Garden Apartments in El Paso went to Appellant's apartment from which smoke was emanating. The technician found it unusual that he heard no smoke detectors because there was a great deal of smoke which he described as smelling unlike anything he had smelled before. Appellant eventually came to the door and, explaining that he had burned a pan, refused to permit the technician in. After the technician informed the apartment manager of his encounter with Appellant, she called Appellant. Appellant explained to the manager that he had burned some beans and had not allowed the technician into the apartment because he was nervous.

Salvador called Appellant that same day and asked Appellant if what he had stated the night before was true. That same day, Appellant informed Salvador that he had fought and struggled with someone, had hit the person with a baseball bat and killed him, and stated that the victim was in his apartment.

When Appellant told Salvador to inform their mother that he was "okay," Salvador was concerned that Appellant would do something, and he and two aunts went to check on Appellant at his apartment. Initially, Appellant did not appear to recognize Salvador when he arrived, and became upset upon recognizing Salvador and realizing that their aunts were present. Appellant screamed, cursed, and paced but eventually allowed his family members to enter the apartment.

2

Upon entry, their aunt, Beatriz Campos, realized a body was on the kitchen floor, and after seeing the apartment "trashed out with beer bottles and blood on the walls and . . . floor," the family members stepped out and called 9-1-1.

Upon their arrival, El Paso Fire Department paramedics and firefighters sought entry to Appellant's apartment to access the victim, Frank Edward Jeffery, but Appellant initially refused while banging a large knife at the door in a "stabbing fashion." When requesting access to the apartment to check on the victim, a fire captain heard Appellant state, in part, "[f]or the police to kill him," and noted that Appellant seemed "a little slow[.]" Another firefighter heard Appellant state that he wanted police to "hurry up so they could kill him." Yet another firefighter who checked Appellant for injuries described him as intoxicated but calm, but also noted that Appellant indicated that he wanted to die.

On gaining access to the apartment, the paramedics determined that Jeffery was dead, and one described the scene as involving a "pretty dramatic case" of assault. Jeffery had been struck in the head, stabbed, and burned over 90 percent of his body.

After police officers arrived, Appellant did not comply with their directives and, when Appellant resisted their attempts to restrain him, police officers tased him. An arresting officer agreed that Appellant's behavior could be characterized as being "not right in the head." After Appellant had been transported to the police department, he stated in the presence of an officer, who had not posed any question to him, "I fucked up." Appellant had not cleaned the apartment and did not appear to have changed his clothes after he killed Jeffery.

During their investigation, police found a baseball bat, a wooden hammer handle, and a knife bearing blood that was consistent with that of Jeffery's DNA. Police also recovered a

3

gasoline can and it was discovered that the smoke detectors in Appellant's apartment had been disabled.

Appellant testified at trial. He stated that he had attended special education classes and had a tenth-grade education, suffered from alcoholism, and had been helped by attending rehabilitation, obtaining counseling with a psychologist, and taking medications. Although he indicated that he received disability benefits, Appellant did not identify the disability for which he received benefits. Appellant described his personal life with Barrio, whom he described as his second wife, and Barrio's verbal and physical abuse of him, which included informing Appellant that she was pregnant with another man's child after purportedly "losing" Appellant's child during pregnancy. He also stated that during an argument with Barrio on the day before he killed Jeffery, Barrio stabbed Appellant with a fork.

Jeffery, who had been one of Appellant's drinking companions, arrived uninvited the following day, walked into Appellant's apartment, and began drinking Appellant's beer. According to Appellant, Jeffery told Appellant he "wasn't man enough," stated that he had slept with Barrio, and became aggressive. Appellant stated that he and Jeffery began fighting because Appellant was mad and "wasn't thinking." Appellant stated that there were many things he did not remember about the fight, including how Jeffery had assaulted him, but noted that he lost control, acknowledged that he used a baseball bat to beat Jeffery, and explained that he used the bat in self-defense. Appellant testified that after he came to his senses, he tried to burn Jeffery's body, and explained that when he spoke with detectives, he "could have said many things" because he was not back to his senses. Appellant also testified that he did not recognize his brother, Salvador, when he arrived at Appellant's apartment.

4

Appellant sought a jury instruction on the defensive issue of insanity during the charge conference, and recited all of the testimony that he believed had raised the issue of insanity. The trial court questioned whether the evidence showed that Appellant had suffered from any mental disease or defect at the time of the offense, and denied the requested instruction.

The jury found Appellant guilty of murder as charged. After the jury found Appellant guilty, testimony was presented regarding Jeffery and additional testimony was presented regarding Appellant's history. Among the witnesses who testified were Appellant's probation officer, who stated that Appellant is an alcoholic. Psychiatrist Dr. Cynthia Rivera, and Psychologist Dr. Robert Rankin testified regarding the physical, sexual, and verbal abuse Appellant suffered as a child. Dr. Rankin also identified Appellant's IQ range, noted that Appellant suffered some brain dysfunction due to difficulties during his birth, had a speech impediment, and was targeted for abuse in school. He described additional episodes of verbal and physical abuse that Appellant suffered as an adult, including verbal and physical abuse imposed by his wife the day before Appellant killed Jeffery. Dr. Rankin testified that Appellant commented that he had become upset after Jeffery came to his apartment and stated that he had slept with Appellant's second wife, an altercation commenced, and after he hit Jeffery, he said, "Who has the power now?" Although Dr. Rivera disagreed with some of Dr. Rankin's conclusions, she believed he would benefit from medication, counseling, and abstinence from alcohol.

The jury sentenced Appellant to sixty years' confinement.

## DISCUSSION

In Issue One, Appellant complains the trial court erred by failing to instruct the jury on the defense of insanity. We disagree.

5

Insanity is an affirmative defense to prosecution if, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong. TEX. PENAL CODE ANN. § 8.01(a)(West 2011). In a criminal jury trial, when the issue of the defendant's sanity is supported by competent evidence, it shall be submitted to and determined by the jury. TEX. CODE CRIM. PROC. ANN. art. 46C.151(a)(West 2006); *see Ferrel v. State*, 55 S.W.3d 586, 591 (Tex.Crim.App. 2001)(defendant is entitled to instruction on defensive issue if the issue is raised by the evidence). However, it is not proper to charge the jury on the defense of insanity if the evidence is insufficient to raise the issue. *See Jeffley v. State*, 938 S.W.2d 514, 516 (Tex.App. –Texarkana 1997, no pet.).

We review the evidence in the light most favorable to the defendant in determining whether the defensive issue of insanity should have been submitted to the jury in the court's charge. *See Kelly v. State*, 195 S.W.3d 753, 756 (Tex.App. –Waco 2006, pet. ref'd)(citations omitted). In *Pacheco v. State,* the Court of Criminal Appeals recognized that "predicated lay opinion testimony when considered with facts and circumstances concerning an accused and of the offense" may be sufficient to raise the defensive issue. *Pacheco v. State*, 757 S.W.2d 729, 736 (Tex.Crim.App. 1988). However, the evidence of lay witnesses who never undertake to express a conclusion or opinion on insanity is insufficient to raise the issue. *Id*. at 735-36; *see also Pacheco v. State*, 770 S.W.2d 834, 836 (Tex.App. –El Paso 1989, pet. ref'd). Evidence of mental disease or defect alone is not equivalent to evidence of insanity. *See Nutter v. State*, 93 S.W.3d 130, 132 (Tex.App. –Houston [14th Dist.] 2001, no pet.); *see also Jeffley*, 938 S.W.2d at 515-16.

Appellant contends the jury was exposed to "more than 16 instances of lay witness testimony supporting an insanity instruction." Because the record demonstrates that no witness,

lay or expert, undertook to express a conclusion or opinion on insanity, the evidence did not raise the issue of insanity. *Pacheco*, 757 S.W.2d at 735-36; *see also Pacheco,*770 S.W.2d at 836. Nor does the evidence show that Appellant, at the time of the offense and as a result of a severe mental disease or defect, did not know his conduct – the killing of Jeffery – was wrong. Therefore, Appellant was not entitled to an instruction on the issue, and the trial court did not err in refusing to instruct the jury on the issue. Issue One is overruled.

In Issue Two, Appellant complains the trial court erred when it failed to suppress his incriminating statements.

Prior to trial, Appellant filed a motion to suppress his statements as the fruit of an unlawful arrest and because his confession and waiver of his *Miranda* rights were not made voluntarily. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After hearing his motion, the trial court denied Appellant's motion to suppress his statements and found that the statements were made voluntarily and spontaneously, and were not the product of custodial interrogation. The trial court also found that Appellant's video-recorded statement was made voluntarily and complied with article 38.22 as well as the provisions of *Miranda.* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2014).

At trial, before the State began its case-in-chief, Appellant reurged his objection to the admission of his video-recorded statement. The trial court observed that it had ruled on Appellant's objections, and had entered findings of fact and conclusions of law.

During its rebuttal, the State sought to introduce Appellant's video-recorded statement into evidence for impeachment purposes. Appellant affirmatively stated, "Since it's for impeachment, and only for that reason, I have no objection."

Appellant specifically complains in Issue Two that the trial court abused its discretion by denying his motion to suppress his confession on the video recording because it is the fruit of an unlawful warrantless arrest, and both his confession and waiver of his *Miranda* rights were involuntarily made as the result of police coercion.   We disagree.

A complaining party must make a timely and specific objection, and obtain an adverse ruling thereon to preserve a complaint for appellate review.   *See Brewer v. State*, 367 S.W.3d 251, 253 (Tex.Crim.App. 2012).   An appellant's assertion during trial that he has "no objection" to the admission of evidence waives any error, despite an earlier adverse pretrial ruling.   *See Holmes v. State*, 248 S.W.3d 194, 200 (Tex.Crim.App. 2008); *Dean v. State,* 749 S.W.2d 80, 83 (Tex.Crim.App. 1988)(defendant's affirmative "no objection" assertion to the admission of the complained-of evidence at trial waives any error despite his adverse pretrial ruling); *Gearing v. State,* 685 S.W.2d 326, 329 (Tex.Crim.App. 1985), *overruled on other grounds, Woods v. State,* 956 S.W.2d 33 (Tex.Crim.App. 1997).   Because Appellant waived the trial court's alleged error, Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

August 27, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)