

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LOUIS THOMAS, | § | No. 08-12-00229-CR |
| Appellant, | § | Appeal from the |
| v. | § | 346th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20090D04037) |
| | § | |

## **O P I N I O N**

Appellant, Louis Thomas, was indicted for felony driving while intoxicated (DWI).   *See* TEX. PENAL CODE ANN. § 49.09(b) (West 2011).   After a jury trial, Appellant was found guilty of the charged offense, and the trial court assessed punishment at 30 years' imprisonment. Appellant now appeals his conviction.   In two issues, he contends that the trial court reversibly erred by failing to grant his motion for continuance and that he was deprived of due process of law because his conviction was obtained as a result of an illegal seizure.   We affirm.

### **BACKGROUND**

On December 12, 2008, Louis Santibanez and Armando Valdez, of the El Paso County Sheriff's Department, were working an off-duty job providing security services at the Fire

Fighter's Hall. During this off-duty job, Detective Santibanez was informed about a disturbance across the street at a duplex on Forney Street. Detective Santibanez went across the street to investigate the disturbance where his attention was drawn to a light-colored SUV driving on Forney Street because it emitted a metal-on-metal scraping sound.[1] The vehicle drove into the cul-de-sac where Detective Santibanez was located and parked about two feet from the curb—just feet from where he stood.

At trial, Detective Santibanez agreed the vehicle was parked "close enough to the curb to be illegally parallel parked[.]" Detective Santibanez observed the front end of the vehicle appeared to have fresh damage. He testified that based on his training and experience, the fresh vehicle damage and screeching noises he heard was indicative of an accident having recently occurred. Under the circumstances, he thought someone may have left the scene of an accident. He called dispatch to see if police were trying to locate a vehicle involved in an automobile accident.

Detective Santibanez approached the driver's side of the vehicle and observed the driver.[2] He instructed Appellant to exit the vehicle because he appeared to be intoxicated. Detective Santibanez observed Appellant had slurred speech, droopy eyes like he was half asleep, and swaying when he stood. Appellant was not handcuffed and was instructed to wait away from the vehicle. Detective Santibanez flagged down an El Paso Police Department unit driven by Officer Rogelio Ledesma who was responding to a call referencing a suspicious vehicle on Forney Street. After informing Officer Ledesma that Appellant was the driver of the vehicle, Detective Santibanez turned over the scene to Officer Ledesma. At the scene, Officer Ledesma

---

[1] Detective Santibanez was in uniform.
[2] At trial, Detective Santibanez identified Appellant as the driver of the vehicle.

observed a silver GMC Yukon with extensive front-end damage that appeared to be fresh. Officer Ledesma observed pieces of broken glass at the bottom of the windshield which were not from the vehicle's windshield. Based on his training and experience, the broken glass was indicative of a possible hit-and-run accident.

Officer Ledesma approached and spoke with Appellant who told him the silver Yukon belonged to him. Officer Ledesma took Appellant to his patrol unit and detained him. At trial, Officer Ledesma testified that Appellant appeared to be intoxicated because he had balancing difficulties, slow, slurred speech, and a strong odor of alcohol emanated from his person. After detaining Appellant, Officer Ledesma turned him over to another unit because he was not certified to conduct Standard Field Sobriety Tests (SFST).

El Paso Police Department Officer Judas Sanchez was dispatched to Forney Street on December 12, 2008, to investigate a suspected DWI. At the scene, Officer Sanchez met with Officer Ledesma and two off-duty sheriff's deputies. At trial, Officer Sanchez identified Appellant as the person who was detained in the back of Officer Ledesma's vehicle. Officer Sanchez made contact with Appellant and conducted a basic roadside interview. Appellant stated the silver Yukon belonged to him and that he had consumed a glass of wine at a restaurant. Officer Sanchez noted Appellant had red, bloodshot eyes, slurred speech, blood on his nose, a strong odor of alcohol, and Appellant was acting belligerently.

Officer Sanchez noticed the vehicle had fresh, front-end damage. He observed pieces of broken glass on the vehicle although the vehicle itself did not have any type of glass damage. The vehicle was missing the front bumper. Based on his training and experience, the blood on Appellant's nose and the damage to the vehicle indicated Appellant's injury was most likely

3

caused by an accident and Appellant hitting his face on the steering wheel.

Officer Sanchez attempted to administer SFSTs on Appellant, but Appellant refused and was subsequently arrested. After Appellant refused to provide a breath or blood specimen, Officer Sanchez obtained a search warrant to get a sample of Appellant's blood. Appellant was transported to Del Sol Medical Center for a blood draw. The lab results showed Appellant had a blood alcohol concentration of 0.22.

Valerie Vivar testified that she heard a loud crash and when she ran outside she saw that a large, light-colored Chevrolet had crashed into her sister's car. The car fled the scene, but Vivar got the vehicle's license plate number. Vivar was able to refresh her memory as to the license plate number by looking at her pretrial statement to police.

## DISCUSSION

### Motion for Continuance

In Issue One, Appellant contends the trial court erred when it failed to grant his oral motion for continuance on the grounds that he was taken by surprise when the State attempted to use Vivar's police statement for the purpose of refreshing a witness's memory. Appellant maintains the trial court erred in denying his oral motion for continuance which addressed the equitable powers of the trial court. Specifically, he argues he lodged an equitable motion for continuance when he made the following statement in the trial court:

> Your Honor, we did have the overnight hours to review the statement, but it is the Defense's position that even given the amount of time now from yesterday at 5:00 or four o'clock until now, that is not a remedy in this situation. In good faith, we are saying that we never saw this statement before trial.

In response, the State argues Appellant did not preserve his complaint for review because his argument on appeal does not comport with the argument presented below. We agree with

4

the State. To preserve a complaint for appellate review, the record must show Appellant made a timely request, objection, or motion that stated the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint, unless the grounds were apparent from the context, and obtained a ruling. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a). The appellate complaint must comport with the specific objection made at trial or else error is waived. *Pena v. State*, 285 S.W.3d 459, 464 (Tex.Crim.App. 2009); *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex.Crim.App. 2009) (same); *Wilson v. State*, 71 S.W.3d 346, 348-49 (Tex.Crim.App. 2002) (same). An objection stating one legal theory may not be utilized to support a different legal theory on appeal. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995). Even constitutional errors may be waived by the failure to object at trial. *Id.*

Although Appellant argues that he moved for a continuance when he informed the trial court that the time given to review the statement did not remedy the situation and he had never seen the statement before trial, nothing in Appellant's argument specifically informed the court he was asking for a continuance or seeking a postponement of the proceedings. Rather, Appellant specifically asked the trial court "to exclude the statement and the mentioning of this statement during the trial in front of the jury." Appellant also asserted Vivar could testify to what she recalled, that there was a license plate number that Appellant had no knowledge of, and to allow Vivar to use the statement to refresh her memory would be very prejudicial, and therefore, he re-urged the trial court to exclude the complained-of statement. The trial court overruled Appellant's objection and denied the motion for mistrial.

Appellant did not move for a continuance orally or otherwise, but instead complained

only that the witness's statement should be excluded and not mentioned in front of the jury. We conclude Appellant's contention on appeal does not comport with the objection he made at trial and thus, is waived. Issue One is overruled.

## Illegal Seizure

In Issue Two, Appellant contends he was denied due process of law because his conviction was obtained as a result of an illegal seizure. Specifically, he complains that his initial detention was unconstitutional and that his detention amounted to an unlawful arrest.

Three categories of interactions between police officers and citizens exist: encounters, investigative detentions, and arrests. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex.Crim.App. 2011); *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex.Crim.App. 2011). Not all encounters between the police and citizens affect the Fourth Amendment's protection against unreasonable seizures. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *Woodard*, 341 S.W.3d at 411. The difference between a detention and encounter is that a detention implicates the Fourth Amendment's search and seizure restrictions and requires articulable suspicion to support a temporary seizure, while an encounter is not subject to those requirements or restrictions. *State v. Garcia-Cantu*, 253 S.W.3d 236, 238 (Tex.Crim.App. 2008).

An encounter is a seizure-free interaction between a police officer and a citizen, and because the citizen is under no compulsion to remain, a police officer is not required to possess any particular level of suspicion before interacting with a citizen. *Hawkins v. State*, 758 S.W.2d 255, 259 (Tex.Crim.App. 1988); *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App. 1986). However, a detention occurs when a person submits to a police officer's show of authority or

6

when a reasonable person would not be free to decline the officer's requests or otherwise terminate the encounter. *Bostick*, 501 U.S. at 434, 111 S.Ct. at 2386; *California v. Hodari D.*, 499 U.S. 621, 629, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991); *State v. Velasquez*, 994 S.W.2d 676, 678-79 (Tex.Crim.App. 1999); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995); *Martin v. State*, 104 S.W.3d 298, 300-01 (Tex.App. – El Paso 2003, no pet.). Moreover, a detention occurs when a citizen in a parked car complies with a police officer's request to roll down the window, open the door, or get out of the car. *Ebarb v. State*, 598 S.W.2d 842, 850 (Tex.Crim.App. [Panel Op.] 1979). An investigative detention must be supported by reasonable suspicion. *York v. State*, 342 S.W.3d 528, 536 (Tex.Crim.App. 2011).

Reasonable suspicion exists when the investigating police officer is aware of, "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001). Reasonable suspicion is determined from the totality of the circumstances. *Id.* The facts relied upon to support a conclusion of reasonable suspicion must amount to something more than an inchoate and general suspicion or hunch. *Hernandez v. State*, 376 S.W.3d 863, 869 (Tex.App. – Fort Worth 2012, no pet.).

Whether a seizure of a person is an investigative detention or arrest is dependent upon the facts and circumstances surrounding the seizure. *Amores v. State*, 816 S.W.2d 407, 412 (Tex.Crim.App. 1991). A person is arrested when he has been actually placed under restraint or taken into custody by an officer. TEX. CODE CRIM. PROC. ANN. art. 15.22 (West 2005). When an arrest is made without a warrant, probable cause exists "if, at the moment the arrest is made,

7

the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex.Crim.App. 2009); *see Parker v. State*, 206 S.W.3d 593, 596 (Tex.Crim.App. 2006). The test for probable cause is objective, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer. *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003); *Amador*, 275 S.W.3d at 878. A finding of probable cause requires "more than bare suspicion" but "less than…would justify…conviction[.]" *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

First, Appellant claims he was detained without reasonable suspicion the instant Detective Santibanez asked him to exit his vehicle. Appellant contends his detention was based upon a mere hunch that something illegal was occurring. In support of this contention, Appellant maintains Detective Santibanez only observed "a damaged car idle outside of a residence."

Although the State attempts to characterize Appellant's initial contact with Detective Santibanez as a mere encounter, the record reflects Detective Santibanez approached Appellant's vehicle and asked him to exit the vehicle. Appellant complied with the detective's request. At trial, Detective Santibanez testified he detained Appellant when Appellant stepped out of his vehicle. Detective Santibanez did not handcuff Appellant, but had him stand away from the vehicle. Moreover, Detective Santibanez testified he would not have let Appellant go inside of one of the townhomes. Officer Ledesma also testified that when he arrived at the scene, Appellant was not being held, but stated he was not free to go because he was under investigative

8

detention. In this case, we assume without deciding that Appellant's initial contact with Detective Santibanez was a detention and not a mere encounter. *See Ebarb*, 598 S.W.2d at 850 (holding that a detention occurs when a citizen in a parked car complies with a police officer's request to roll down the window, open the door, or get out of the car).

Next, we must determine whether Detective Santibanez had reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead him to conclude that Appellant actually was, had been, or soon would be engaged in criminal activity. *See Crain v. State*, 315 S.W.3d 43, 52 (Tex.Crim.App. 2010). The record shows Detective Santibanez was investigating a disturbance at a duplex when his attention was drawn to a light-colored SUV driving on Forney Street because it emitted a metal-on-metal scraping sound. The vehicle subsequently parked just feet from where Detective Santibanez stood. According to Detective Santibanez's trial testimony, the vehicle was parked "close enough to the curb to be illegally parallel parked[.]" Detective Santibanez observed fresh, front-end damage to the vehicle. Based on his training and experience, Detective Santibanez testified the fresh vehicle damage and screeching noises he heard were indicative of an accident having recently occurred.

Detective Santibanez instructed Appellant to exit the vehicle because he appeared to be intoxicated. Detective Santibanez observed Appellant had slurred speech, droopy eyes, and that he swayed while standing. According to Detective Santibanez, Appellant was detained when he stepped out of the car. Based on the totality of the circumstances, Detective Santibanez had sufficient articulable facts supporting a reasonable suspicion to believe Appellant had been driving the vehicle while intoxicated.

9

Detective Santibanez could have considered Appellant's conduct as being out of the ordinary and unusual such that it justified a closer look. *See Garza v. State*, 771 S.W.2d 549, 558 (Tex.Crim.App. 1989) (explaining reasonable suspicion means that there is something out of the ordinary occurring and some indication that unusual activity is related to crime). Detective Santibanez could have reasonably inferred Appellant did not have capacity to drive as he witnessed Appellant close enough to the curb to be parked illegally and observed several indicators consistent with being intoxicated. *See Martinez v. State*, No. 14-00-00132-CR, 2001 WL 1288891, at \*2 (Tex.App. – Houston [14th Dist.] 2001, no pet.) (op., not designated for publication) (finding officer had reasonable suspicion to detain appellant where appellant demonstrated inability to park, had bloodshot eyes, poor balance, and odor of alcohol was on his breath); *Alonzo v. State*, 251 S.W.3d 203, 208-09 (Tex.App. – Austin 2008, pet. ref'd) (police had sufficient articulable facts to detain appellant where officer noticed glassy eyes, unsteadiness, slurred speech, and moderate odor of alcohol); *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex.App. – Fort Worth 2001, no pet.) (reasonable suspicion to detain supported by appellant's slurred speech and odor of alcohol on her breath).

Next, Appellant argues his detention constituted an unlawful arrest because Santibanez did not conduct any type of investigation after he detained Appellant. He further contends his due process rights were violated because he was arrested without a warrant or probable cause. As correctly noted by the State, Appellant's argument focuses solely on the actions of Detective Santibanez and entirely ignores the cooperative efforts that occurred between Detective Santibanez and El Paso Police Officers Ledesma and Sanchez. The Texas Court of Criminal Appeals has noted that the sum of information known to officer at the time of arrest may be

10

considered in determining whether there was probable cause to effectuate an arrest. *Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App. 1982).

On the day in question, Detective Santibanez was working an off-duty job when a disturbance across the street was reported to him. During the investigation of the reported disturbance, Detective Santibanez observed Appellant operate and park his vehicle in a public place. Because Appellant appeared to be intoxicated, Detective Santibanez asked him to step out of the vehicle and was detained. Detective Santibanez then turned over the case to the police who arrived at the scene.[3]

Officer Ledesma responded to a call concerning a suspicious vehicle on Forney Street and was flagged down by Detective Santibanez. Officer Ledesma then spoke with Appellant and observed Appellant exhibited signs of intoxication. Officer Ledesma detained Appellant for suspicion of having left the scene of an accident and DWI. Because Officer Ledesma was not certified to administer SFSTs, he placed Appellant in his patrol unit pending further investigation. Officer Sanchez subsequently arrived at the scene and spoke with Officer Ledesma and Detective Santibanez. When he made contact with Appellant, Officer Sanchez observed Appellant exhibited signs of intoxication. Appellant told him that the Yukon was his vehicle and that he had consumed one glass of wine at a restaurant. Appellant refused to perform the requested SFSTs.

Officer Sanchez subsequently read Appellant his *Miranda* rights and took him into custody for DWI. Based on the foregoing, we conclude that Appellant was subjected to an investigation, which was a cooperative effort between Detective Santibanez and officers of the El

---

[3] On redirect, Detective Santibanez explained the Sheriff's Department has jurisdiction in El Paso County and regularly patrols areas within the city. He further clarified that he turned the scene over to the police because the Sheriff Department's jurisdiction is waived to the El Paso Police Department.

11

Paso Police Department, and that Appellant's arrest was not unlawful as it was supported by probable cause to believe Appellant had committed the offense of DWI. *See Dyar v. State*, 125 S.W.3d 460, 464 (Tex.Crim.App. 2003) (holding probable cause existed to arrest defendant for DWI where driver admitted to drinking and driving, officer smelled alcohol, observed slurred speech, unintelligible answers, and red, glassy eyes); *Hogan v. State*, 329 S.W.3d 90, 96 (Tex.App. – Fort Worth 2010, no pet.) (holding strong odor of alcohol, bloodshot, watery, and heavy eyes, swaying, unsteady balance, reckless driving, and refusal to provide a breath sample sufficient to establish probable cause for DWI arrest); *Maxwell v. State*, 253 S.W.3d 309, 314 (Tex.App. – Fort Worth 2008, pet. ref'd) (noting suspect's refusal to perform SFSTs is a factor supporting probable cause to make DWI arrest); *State v. Garrett*, 22 S.W.3d 650, 654-55 (Tex.App. – Austin 2000, no pet.) (holding probable cause existed to arrest defendant for DWI where defendant violated traffic laws, smelled like alcohol, had watery eyes, was unsteady on his feet, and refused to perform SFSTs). Issue Two is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

GUADALUPE RIVERA, Justice

August 29, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)